UNITED STATES of America,
Plaintiff-Appellee,

v.

Ronald E. VEATCH,
Defendant-Appellant.

No. 80–1567.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 11, 1981.

Decided June 12, 1981.

Don Gladden, Fort Worth, Tex., for defendant-appellant.

Roslyn Moore, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee; Kenneth L. Fields, Asst. U.S. Atty., Phoenix, Ariz., on brief.

Before KILKENNY and SNEED, Circuit Judges, and GRANT,* District Judge.

GRANT, District Judge.

Appellant Ronald E. Veatch appeals from a conviction for transporting property obtained by fraud in interstate commerce in violation of 18 U.S.C. § 2314.[1] He raises the following issues:

1. Whether the district court erred in denying his motion to suppress certain evidence?

---

* Senior District Judge Robert A. Grant of the United States District Court for the Northern District of Indiana, is sitting by designation.

1. 18 U.S.C. § 2314 provides in pertinent part that:

> Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or
> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more;
>
> * * * * * *
>
> Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

2. Whether the district court erred in denying his motion for an evidentiary hearing on the question of his competency to stand trial?

3. Whether the district court erred in refusing to allow him to introduce evidence supporting a defense of insanity?

4. Whether the district court erred in conducting a hearing on pretrial motions in chambers without his presence?

5. Whether the district court's denial of his motion for a continuance following the death of the father of one of his attorneys resulted in him being denied effective assistance of counsel?

### Facts

On September 1, 1978, Veatch, using the alias Frank Caven, purchased by check a diamond faced gold watch from a jewelry store in Fort Worth, Texas. Before accepting the check for $6,850, a store salesman and bookkeeper apparently verified that the check would clear by calling a telephone number supplied by Veatch and speaking with a Mr. Doss, whom Veatch claimed to be his banker. The store representatives were satisfied and accepted the check.

On September 4, 1978, Veatch purchased, through two associates, two gold and diamond rings from the same jewelry store. Payment of $8,000 was again made by check. The same salesman as in the earlier transaction accepted the check, but this time without verification for the reason that the banks were closed due to a holiday. Both checks were returned for lack of sufficient funds.[2]

On November 1, 1978, the FBI, in Phoenix, Arizona, learned that Veatch was associated with the Days Inn Motel in that city. The manager of the motel, Don Lindquist, after being advised of Veatch's background, told the FBI that Veatch was at that moment en route to Phoenix from Williams, Arizona, in a blue Cadillac limousine. Later that same day, officers from the Arizona Department of Public Safety, Highway Patrol, spotted and stopped the vehicle. Veatch and two other persons in the vehicle all stepped out peacefully. One of the officers noticed in the vehicle both a handgun and a wallet which had been slightly wedged between the bottom and backrest portions of the back seat where Veatch had been sitting. Both the weapon and the wallet were in plain view. When asked by the officer if the wallet were his and whether he wanted to take it with him, Veatch denied any ownership or interest in the same. The officer then proceeded to examine the contents of the wallet and discovered the sales receipt for the watch obtained in Texas.

The two other occupants of the limousine returned the vehicle to Lindquist. He had been advised by the vehicle's seller that Veatch had purchased it with a fraudulent check. Before repossession of the vehicle, Lindquist removed some of Veatch's belongings including an Arizona bank pouch containing the watch and one of the rings. All of these items were then placed in a briefcase and left in Veatch's room. On November 2, 1978, when it became apparent that Veatch was going to remain in jail, Lindquist removed all of Veatch's belongings from his room so that it could be available for rental.

On the following day, November 3, 1978, after learning of the FBI's investigation, Lindquist delivered all of Veatch's belongings, including the watch and two rings, to the FBI.[3] This action, however, was contrary to Veatch's instructions. He had advised Lindquist to give the belongings to his lawyer.

---

**2.** After the second fraudulent transaction occurred, the salesman was able to contact the real Mr. Doss who was a banker but who had never known Veatch. Both the salesman and bookkeeper positively identified Veatch as the purchaser of the watch and two rings.

**3.** The second fraudulently obtained ring was already in Lindquist's possession having been given to him by Veatch three days before Veatch's arrest. Lindquist believed that the ring was given to him as a gift since Veatch said he didn't like it and it didn't fit well.

On February 5, 1979, Veatch filed a motion for a determination of his competency to stand trial. The Government expressed no objection, and the motion to have Veatch examined pursuant to 18 U.S.C. § 4244 was granted. Veatch was transferred to Springfield, Missouri, for the examination and was returned from Springfield in July, 1979, with a finding that he was competent even though very uncooperative.

Veatch was released on bond on August 15, 1979, but failed to appear for trial on December 4, 1979. He was subsequently arrested in Oklahoma. The trial of the original charge was then rescheduled and began on June 26, 1980. On the day of trial, Veatch filed a second motion for a determination of his competency to stand trial. He also filed a notice of intention to rely upon the defense of insanity. The district court refused to permit Veatch to raise the insanity defense because of an untimely filing of the notice pursuant to Fed.R.Crim.P. 12.2(a) and the Rules of Practice for the District Court for the District of Arizona. Veatch's oral motion for permission to show cause for his untimely filing was denied. The court also concluded, based upon the case file, the various opinions of the psychiatrists, and the Springfield report and finding, that Veatch was competent to stand trial and that an evidentiary hearing would be unnecessary. Veatch's supplementary motion for a continuance to allow the Government time to prepare a rebuttal to the insanity defense was likewise denied. In addition, Veatch moved the court to suppress any use by the Government of the watch, two rings and sales receipt at trial. That motion was denied.

### Suppression of Evidence

■ At trial, the two rings, watch and sales receipt were all admitted into evidence over Veatch's objections. He contends that all of the items were unlawfully seized without a warrant. We disagree.

The sales receipt was found by the police officer in the wallet lodged in the back seat of the limousine where Veatch had been sitting. The officer opened the wallet and searched its contents after Veatch denied ownership when the officer asked him if it belonged to him. The Government contends that Veatch has no standing to challenge the search of the wallet because he had voluntarily abandoned it.

In *United States v. Jackson*, 544 F.2d 407 (9th Cir. 1976), this court held that if a person has voluntarily abandoned property, he has no standing to complain of its search or seizure. The basis of the principle is that upon abandonment, the party loses a legitimate expectation of privacy in the property and thereby disclaims any concern about whether the property or its contents remain private.[4] The difficult question is what actions constitute an abandonment of property. In *Jackson*, the court stated:

> Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other objective facts. [cites omitted]. Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search.

544 F.2d at 409.[5]

The issue, therefore, is whether Veatch's denial of ownership and interest in the wal-

4. In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Supreme Court replaced the concept of standing with the concept of a "legitimate expectation of privacy." The Court stated: "But we think the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of standing." 439 U.S. at 139, 99 S.Ct. at 428. The Court made clear that its decision only

affected terminology and not substance when it stated that "[t]he inquiry under either approach is the same." *Id.* (footnote omitted). The principles and holding of *Jackson* are thus left unaffected.

5. In *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir. 1973) (en banc), the court provided the following definition of abandonment:

> Abandonment is primarily a question of intent, and intent may be inferred from

let constitutes an abandonment of property. We find that it does.

In *United States v. Cella*, 568 F.2d 1266, 1283 (9th Cir. 1977), the court summarized some of the acts which had been found to constitute abandonment and specifically noted *Jackson*, characterizing the act in that case as:

[A] denial of ownership when questioned, even if the defendant is seen previously in possession of the item. . . .

568 F.2d at 1283. *Accord, United States v. Canady*, 615 F.2d 694, 696–97 (5th Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); *United States v. Miller*, 589 F.2d 1117, 1131 (1st Cir. 1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979); *United States v. Anderson*, 500 F.2d 1311, 1318 (5th Cir. 1974); *United States v. Colbert*, 474 F.2d 174, 176–77 (5th Cir. 1973) (en banc). *See also Lurie v. Oberhauser*, 431 F.2d 330, 333 (9th Cir. 1970). The facts of the present case fall well within the holdings of these cases. Veatch expressly disclaimed ownership of the wallet to the officer. This left him with no reasonable expectation of privacy in the wallet and he cannot now object to its search. The district court's denial of Veatch's motion to suppress the sales receipt on the grounds that it was abandoned is affirmed.

The second suppression issue raised by Veatch concerns the watch and two rings which were given to the FBI by Lindquist.[6] Veatch contends that the FBI should have secured a search warrant before receiving these items. The Government contends that Lindquist's actions were voluntary and private, and absent some type of FBI in-

volvement, the items were lawfully received.

■ The central question surrounding this matter is whether Lindquist, "in light of all the circumstances of the case, must be regarded as having acted as an 'instrument' or agent of the state" when he obtained Veatch's property and gave it to the FBI. *Coolidge v. New Hampshire*, 403 U.S. 443, 487, 91 S.Ct. 2022, 2049, 29 L.Ed.2d 564 (1971). This court has held "[a] private search in which the government is in no respect involved—either directly as a participant or indirectly as an encourager—is not subject to the Fourth Amendment because the private actor is motivated in whole or in part by a unilateral desire to aid in the enforcement of the law." *United States v. Gumerlock*, 590 F.2d 794, 800 (9th Cir.) (en banc), *cert. denied*, 441 U.S. 948, 99 S.Ct. 2173, 60 L.Ed.2d 1052 (1979). *See also United States v. Gomez*, 614 F.2d 643, 645 (9th Cir. 1979); *United States v. Sherwin*, 539 F.2d 1 (9th Cir. 1976) (en banc). In *United States v. Stevens*, 601 F.2d 1075, 1080 (9th Cir.), *cert. denied*, 444 U.S. 917, 100 S.Ct. 232, 62 L.Ed.2d 172 (1979), the court stated that "[a] mere purpose to assist the government is not sufficient in and of itself to convert a private actor into a government actor."

In *Sherwin, supra*, 539 F.2d at 6, the court stated that:

A private person cannot act unilaterally as an agent or instrument of the state; there must be some degree of governmental knowledge and acquiescence. In the absence of such official involvement, a search is not governmental. [cites omitted]. And once a private search is

---

words spoken, acts done, and other objective facts. [cite omitted]. All relevant circumstances existing at the time of the alleged abandonment should be considered. [cite omitted]. Police pursuit or the existence of a police investigation does not of itself render abandonment involuntary. [cites omitted]. The issue is not abandonment in the strict property-right sense, but whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable

expectation of privacy with regard to it at the time of the search.

6. One of the rings was given to Lindquist as a gift by Veatch just three days prior to his arrest. Veatch had no possessory interest in that ring whatsoever and his claim that the FBI should have obtained a warrant before receiving it is totally meritless. The court will, therefore, limit its analysis only to the ring and watch which Lindquist retrieved from the limousine.

completed, the subsequent involvement of government agents does not retroactively transform the original intrusion into a governmental search.

The evidence in this case supports the district court's ruling that Lindquist's actions were purely private and not instigated by or participated in by the FBI. Lindquist removed Veatch's belongings from the limousine and placed them in Veatch's room. Lindquist later removed the items so that the room could be rented. These actions occurred without the knowledge or acquiescence of the FBI. When questioned by the FBI, Lindquist volunteered the information that he was in possession of the watch and rings. The FBI did not request or suggest that the items be transferred to them. Turning over the items to the FBI was the result of Lindquist's own decision. The fact that the items were turned over to the FBI in contravention of Veatch's direction has no bearing to this decision. Therefore, in light of the fact that the FBI neither participated in, encouraged or coerced Lindquist, we affirm the district court's holding that the FBI was not required to obtain a warrant before receiving the watch and rings from Lindquist.

### Evidentiary Competency Hearing

■■■ On the day of trial, Veatch moved for an evidentiary hearing to determine his competency to stand trial. This motion was denied based upon the findings from the examination conducted in Springfield, Missouri, which declared Veatch competent to stand trial,[7] and the district judge's observation and study of Veatch throughout the case. At the invitation of the court, Veatch submitted an offer of proof on this issue. The primary evidence is a report by Dr. David Gurland, who had conducted a mental examination of Veatch just one day before trial. Dr. Gurland concluded that Veatch was incompetent to stand trial. The offer also cites Veatch's long history of emotional and mental problems and the fact that he had been found incompetent to stand trial on at least one previous occasion.

In *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975), the Supreme Court held that a trial court has a duty to insure that a defendant not be subjected to trial if his "mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." In *Spikes v. United States*, 633 F.2d 144, 146 (9th Cir. 1980), this court noted that the standard of competence to plead guilty is different from the standard to stand trial, stating that:

> The standard of competence to stand trial is the ability to understand the nature of the proceedings in which one is engaged and to assist in one's defense.

*See also Chavez v. United States*, 641 F.2d 1253 (9th Cir. 1981); *United States v. Clark*, 617 F.2d 180 (9th Cir. 1980); *de Kaplany v. Enomoto*, 540 F.2d 975 (9th Cir. 1976) (en banc), *cert. denied*, 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977).

In this case, the district court ordered a psychiatric examination of Veatch, pursu-

---

7. Veatch was examined pursuant to 18 U.S.C. § 4244 which provides in part:

Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceedings are pending. Upon such a motion or upon a similar motion in behalf of the accused, or upon its own motion, the court shall cause the accused, whether or not previously admitted to bail, to be examined as to his mental condition by at least one qualified psychiatrist, who shall report to the court.

\* \* \* \* \* \*

If the report of the psychiatrist indicates a state of present insanity or such mental incompetency in the accused, the court shall hold a hearing, upon due notice, at which evidence as to the mental condition of the accused may be submitted, including that of the reporting psychiatrist, and make a finding with respect thereto.

ant to 18 U.S.C. § 4244. The statute provides that a hearing is required "[i]f the report of the psychiatrist indicates a state of present insanity or . . . mental incompetency in the accused." In *Chavez, supra,* at 1257, the court stated:

A *hearing is not required,* on the basis of the section 4244 motion alone, *if the psychiatrist's report does not indicate present incompetence.* [cite omitted]. A judicial determination of competence or incompetence is required after the mandatory psychiatric examination, regardless of the content of the report.

(emphasis added).

The psychiatric examination conducted in Springfield, Missouri, found Veatch to be "competent and responsible for his actions." Therefore, the district court was not required to hold a hearing on that question. The issue raised by Veatch in this appeal is whether the district court, although not required to conduct an evidentiary hearing, nevertheless erred by not conducting one in this instance based upon all of the facts and circumstances before it.

Whether a hearing is required depends upon the facts of the particular case. *United States v. Caplan,* 633 F.2d 534, 539 (9th Cir. 1980); *Clark, supra,* 617 F.2d at 184. In *Clark,* the court held that when a defendant, committed as incompetent under 18 U.S.C. §§ 4244, 4246, is later declared competent and returned to the court, a second competency hearing is not automatically required before criminal proceedings on the issue of guilt can be resumed. The task of the court is to determine whether there is "substantial evidence" that the defendant may be mentally incompetent to stand trial. *Caplan, supra,* 633 F.2d at 539. Evidence is "substantial" if it raises a reasonable doubt about the defendant's mental competency to stand trial. *Moore v. United States,* 464 F.2d 663, 666 (9th Cir. 1972). In *Chavez, supra,* at 1257, citing *United States v. Cook,* 418 F.2d 321 (9th Cir. 1969), this court stated that "[a]fter the first (mandatory) section 4244 examination and determination, it is in the district court's discretion

to grant or deny subsequent motions for psychiatric examination."

In *Caplan,* the court discussed some of the factors to be weighed in the process:

As we indicated in our review of the evidence in *Clark,* evidence of past incompetency may be relevant in determining a defendant's present competence to stand trial.

\* \* \* \* \* \*

Of course, the probative value of past reports may dissipate over time. The court, therefore, having received a report of present competence, must reassess the quality of past evidence. It should consider, inter alia, the detail and thoroughness of the prior reports, the seriousness of illness reported, and the prognosis, if any, for future recovery. [cite omitted]. Besides past reports, other factors for consideration could include the time elapsed for treatment, the opportunity to study the defendant during the time of treatment or commitment, and the court's own observation of the defendant. Although the ultimate report in which the defendant is found competent may often be the most probative information, that report must be carefully evaluated and weighed in light of the importance given to all other relevant indicia of the defendant's present mental health.

633 F.2d at 539–40.

After reviewing the entire record that was before the district court and the offer of proof submitted by Veatch, we conclude that the district court did not err in denying Veatch's motion for an evidentiary hearing on the question of competency. There is no question that Veatch's medical history shows a person who has experienced mental and emotional difficulties during much of his life. That entire history, however, was before the psychiatric staff in Springfield when it declared Veatch competent. The staff had a full opportunity in reaching its conclusion to assess and consider all of Veatch's previous psychiatric treatment. Writing for the entire staff, Dr. Nicola Ku-

nev acknowledged that Veatch's mental history was evaluated. The other major element of Veatch's offer of proof was a report by his psychiatrist, Dr. Gurland. In addition to the examination conducted immediately preceding trial, Dr. Gurland twice examined Veatch in January of 1978 and again in September, 1979. The reports filed then do not substantially differ from the report filed in the offer of proof. Dr. Gurland's early reports were also considered by the staff in Springfield as well as the district court. The offer of proof essentially contains materials of which the staff in Springfield and the district court itself were fully aware and had examined and considered. It fails to raise any reasonable doubt concerning the continued validity of the Springfield report.

The district court denied Veatch's motion based upon the Springfield finding, the opinions of various psychiatrists and its own observations and study of Veatch throughout the case. Although the probative value of the Springfield report must be carefully considered since it was prepared approximately one year before the start of trial, there is nothing in the offer of proof that diminishes the substantial weight accorded it by the district court. Therefore, we conclude that the district court did not abuse its discretion in denying Veatch's motion for an evidentiary hearing on his competency to stand trial.

### Preclusion of Insanity Defense

In ruling that Veatch could not raise the defense of insanity at trial, the district court relied upon Fed.R.Crim.P. 12.2(a) which provides as follows:

(a) *Defense of Insanity.* If a defendant intends to rely upon the defense of insanity at the time of the alleged crime, he shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. If there is a fail-

ure to comply with the requirements of this subdivision, insanity may not be raised as a defense. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

Veatch makes two claims. First, that his notice was timely filed. In the alternative, that the district court erred by denying him an opportunity to show cause for the untimely filing and by not granting his motion for a continuance which would allow the Government time to prepare a rebuttal. We reject both claims.

 It is within the district court's discretion to grant or deny a defendant relief from the exclusion provision of Rule 12.2(a). *See Davis v. United States*, 411 U.S. 233, 245, 93 S.Ct. 1577, 1584, 36 L.Ed.2d 216 (1973) (waiver provision of Rule 12(b)(2)). In *United States v. Caplan*, 633 F.2d 534, 539 (9th Cir. 1980), the court stated the consequences of noncompliance:

Had trial counsel intended to interpose an insanity defense on appellant's behalf, he would have been required to notify the government in writing of such intention and file a copy of such notice with the clerk. If there is a failure to give such notice, insanity may not be raised as a defense. Rule 12.2, Fed.R.Crim.P. Appellant clearly waived an insanity defense by failing to pursue the determination of his sanity at the time of the offense by psychiatric examination and by failing to comply with Rule 12.2.

 Rule 12.2(a) makes abundantly clear that the notice of intention must be filed "within the time provided for the filing of pretrial motions or at such later time as the court may direct...." In this case, the applicable deadline for the filing of the notice was 15 days before trial as provided by Local Rule 11 inasmuch as the court did not expressly direct a later time. Veatch's notice was filed the very day trial was to begin. He clearly failed to satisfy Rule

12.2(a)'s timeliness requirement. As this court stated in *United States v. Winn*, 577 F.2d 86, 89 (9th Cir. 1978):

> [W]here a Federal Rule of Criminal Procedure indicates that noncompliance with its provisions will constitute a waiver of future objections based on the subject matter of the rule, no relief from waiver is available on review absent a showing of cause and prejudice. [cite omitted]. Rule 12.2 clearly implies that a defendant who fails to comply with its provisions waives his right to raise an insanity defense.

> \* \* \* \* \* \*

> The Advisory Committee notes to rule 12.2 make it clear, however, that the purpose of the rule is substantive, not formalistic. It is to give the Government time to prepare to meet a defendant's insanity defense. Once insanity is raised as a defense, the Government must bear the burden of proving sanity beyond a reasonable doubt. [cites omitted]. In view of the significance of this burden, justice requires prior notice to the Government of an insanity defense. Rule 12.2 is designed to insure that both the defendant and the Government have ample opportunity to investigate the facts of an issue critical to the determination of guilt or innocence. [cite omitted]

We find, therefore, that the district court did not err in precluding Veatch from raising the defense of insanity at trial. With respect to the district court's denial of Veatch's motion to show cause for the untimely filing, we find that this denial does not constitute an abuse of discretion since the causes asserted by Veatch do not fall within the meaning of Rule 12.2(a).[8] For these same reasons, we find that the district court did not abuse its discretion in denying Veatch's motion for a continuance.

---

**8.** Despite this holding, we encourage district courts to at least provide the defendant an opportunity to show cause for an untimely filing of notice. The most appropriate time and place to require an articulation and examina-

### Absence from In Chambers Pretrial Conference

■ Veatch contends that his due process rights were violated because of his absence from a pretrial conference in chambers between counsel and the district judge. The conference dealt with a number of matters including Veatch's motion for an evidentiary hearing regarding his competency to stand trial, his oral motion for permission to show good cause for the untimely filing of notice concerning reliance on an insanity defense, and his motion for a continuance to allow the Government adequate time to prepare to rebut the insanity defense. A motion in limine and motion to suppress evidence were also considered with the latter being decided after an open court hearing with Veatch present.

The first issue this court must address is Veatch's claim that he was excluded from the conference despite his request to be present. The court can find no evidence to support this claim. The only mention of a request to be present concerns presence at a hearing on the insanity defense issue and not presence at the conference itself.

More importantly, this court also finds that absence from the conference, regardless of whether a request to attend was made, does not constitute a violation of due process. Although the right of a defendant to be present at his trial is "ancient and well-established," *Badger v. Cardwell*, 587 F.2d 968, 970 (9th Cir. 1978), it is not all encompassing or absolute. *Id.* at 971; *Polizzi v. United States*, 550 F.2d 1133, 1137 (9th Cir. 1976). In *Polizzi, supra*, 550 F.2d at 1138, the court stated:

> The Court has said that the existence of a right to be present depends upon a conclusion that absence could, under some set of circumstances, be harmful. Due process does not assure "the privilege of presence when presence would be useless, or the benefit but a shadow." *Snyder v.*

---

tion of the cause problem is at the district court level. This will minimize the possibility of a defendant creating "causes" for appeal purposes and will assist this court in reviewing the correctness of a district court's decision.

*Massachusetts*, 1934, 291 U.S. 97, 106–07, 54 S.Ct. 330, 332, 78 L.Ed. 674 (Cardozo, J.).

In *Snyder v. Massachusetts*, 291 U.S. 97, 107–08, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934), Justice Cardozo stated that the defendant has a constitutional right to be present at trial "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only." And in *Faretta v. California*, 422 U.S. 806, 819 n.15, 95 S.Ct. 2525, 2533, 45 L.Ed.2d 562 (1975), the Court stated that the constitution only grants to criminal defendants the "right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings. . . ." *See also United States v. Brown*, 571 F.2d 980, 986 n.5 (6th Cir. 1978). The standards set forth by Justice Cardozo in *Snyder* and the court in *Faretta* are embodied in Fed.R.Crim.P. 43(c)(3) which provides that the presence of a defendant is not required at a conference or argument upon a question of law.

The matters addressed during the conference in question fall within the scope of Rule 43(c)(3) and the standards enunciated by Justice Cardozo in *Snyder* and the Court in *Faretta*. Furthermore, the fairness of the trial was not detrimentally affected by Veatch's absence since he was competently and effectively represented by counsel at the conference. *Brown, supra*, 571 F.2d at 987. Veatch's presence would have contributed nothing substantial to his opportunity to defend since the matters discussed predominantly involved questions of law. Veatch was not prejudiced and, therefore, his absence does not constitute a violation of due process.[9]

### Denial of Continuance

■ On the second and last morning of trial, one of Veatch's three attorneys received word that his father had died during the night. Veatch moved for a continuance so that the attorney could return home and make the necessary arrangements. Concluding that this was not a complex case and there were two competent counsel remaining, the district court denied the motion. After a brief recess, the attorney decided to remain in the trial and participated with his two defense colleagues in closing arguments.

It is well established that the granting or denying of continuances lies with the sound discretion of the trial judge and will only be disturbed upon a showing of clear abuse. *United States v. Ortiz*, 603 F.2d 76, 78 (9th Cir. 1979), *cert. denied*, 444 U.S. 1020, 100 S.Ct. 678, 62 L.Ed.2d 652 (1980); *United States v. Mills*, 597 F.2d 693, 698–99 (9th Cir. 1979); *United States v. Michelson*, 559

---

9. In a number of cases relatively similar to the present case, the court has found no violation of due process. *See Lowery v. Cardwell*, 575 F.2d 727, 729 (9th Cir. 1978) (purely procedural matters discussed during an off-the-record conference held in chambers); *Polizzi v. United States*, 550 F.2d 1133 (9th Cir. 1976) (post-verdict interrogation of juror "in camera"); *United States v. Easley*, 505 F.2d 184 (9th Cir. 1974) (conference involving the scope of possible cross-examination); *United States v. Williams*, 455 F.2d 361 (9th Cir.), *cert. denied*, 409 U.S. 857, 93 S.Ct. 140, 34 L.Ed.2d 102 (1972) (side bar conference at trial); *Stein v. United States*, 313 F.2d 518 (9th Cir. 1962), *cert. denied*, 373 U.S. 918, 83 S.Ct. 1307, 10 L.Ed.2d 417 (1963) (evidentiary hearing in chambers where the district judge granted the defendant's motion to suppress).

In *Olney v. United States*, 433 F.2d 161 (9th Cir. 1970), the defendant alleged that he was deprived of his right to a fair trial because he was not present during the hearing of a pretrial motion to suppress evidence. Although not expressly deciding whether a defendant is entitled to be present at a pretrial suppression hearing, the court did hold:

On this record, however, we need not decide to what extent, if at all, a defendant is entitled to be present at a pretrial hearing of this type. We have reviewed the record of the pretrial hearing and have concluded that appellant's rights were well protected by his counsel. We fail to see how his rights could have been better protected by his presence. As this court has stated in a similar context, "[t]he presence of a defendant must bear a reasonably substantial relationship to the opportunity to defend." Thus, while we do not decide whether appellant had a constitutional right to be present, it is clear that his absence, if erroneous, was harmless beyond a reasonable doubt.

433 F.2d at 163 (footnotes omitted).

F.2d 567, 572 (9th Cir. 1977). Actual prejudice to the defendant must be shown before the denial of a continuance will be reversed. *United States v. Hernandez*, 608 F.2d 741, 746 (9th Cir. 1979); *United States v. Petsas*, 592 F.2d 525, 527 (9th Cir.), *cert. denied*, 442 U.S. 910, 99 S.Ct. 2824, 61 L.Ed.2d 276 (1979); *United States v. Lustig*, 555 F.2d 737, 744 (9th Cir. 1977), *cert. denied*, 434 U.S. 1045, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978).

Veatch contends that the severe emotional consequences of the death of an immediate family member would render counsel in a criminal case ineffective. Veatch, however, doesn't point to any specific prejudice suffered other than the brevity of the attorney's final summation to the jury. Veatch ignores the fact that his other two attorneys also gave closing arguments and there is no indication that all three arguments failed to fully explore all facts and issues related to the case. As this court stated in *Lustig, supra*, 555 F.2d at 744, quoting *United States v. Mardian*, 546 F.2d 973, 979 n.9 (D.C.Cir.1977): "[A] defendant's right to an attorney of his choice is not so absolute as to permit disruption of the fair and orderly administration of justice when another competent attorney is available to continue the defense."

Based upon the record which shows that Veatch was not prejudiced by the denial, we hold that the trial judge did not abuse his discretion in refusing to grant a continuance.

AFFIRMED.