UNITED STATES of America, Plaintiff-Appellee,

v.

Samuel BUCHBINDER, Defendant-Appellant.

No. 85–2150.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1986.
Decided July 15, 1986.

Frederick F. Cohn, Frederick F. Cohn, Ltd., Chicago, Ill., for defendant-appellant.

Steven A. Miller, Asst. U.S. Atty., Chicago, Ill., Anton R. Valukas, U.S. Atty., for plaintiff-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and EVANS, District Judge.*

COFFEY, Circuit Judge.

The appellant, Samuel Buchbinder, was charged in a nine-count indictment with wire fraud in violation of 18 U.S.C. § 1343. After a five-day jury trial, the defendant was convicted of all nine counts and was sentenced to a six-month term of work release, placed on probation for five years and ordered to pay restitution in the amount of $148,856. We affirm.

I

Samuel Buchbinder's indictment resulted from fraudulent trading in his Paine Webber, Inc. commodities trading account. The evidence reveals that on September 2, 1982, Buchbinder opened an account with a branch office of the New York Paine Web-

---

* The Honorable Terence T. Evans, District Judge of the Eastern District of Wisconsin, is sitting by designation.

ber brokerage firm, located in Chicago, Illinois. He represented to Paine Webber that his net worth was approximately $1.2 million, that his annual income was $100,000 and that he had liquid assets totaling $250,000 when in fact he was broke and unemployed at the time he opened his trading account. Buchbinder began trading activities immediately and within two and one-half weeks generated $113,956 in trading losses and commissions in his account. To cover these losses, he deposited a $50,000 bank draft on September 7, 1982 into the Paine Webber trading account drawn from a bank account he maintained at the Canadian Imperial Bank of Commerce in the Bahamas and deposited another $50,000 and $70,000 bank draft on September 10 and 15, 1981, also drawn on this account at the Canadian Imperial Bank. At the time of these three withdrawals, Buchbinder had only $400 in his Canadian Imperial Bank account.[1] Having inflated his Paine Webber account to $170,000 through these worthless checks, Buchbinder also withdrew $22,800 and $16,700 in cash on September 15 and 21, 1982. As a result of his trading activities in his worthless account, Buchbinder owed Paine Webber approximately $156,000. Paine Webber commenced a civil action in federal court in 1983 against Buchbinder to recover the funds lost through his fraudulent activities. Buchbinder subsequently signed a confession of judgment and a note agreeing to repay Paine Webber for the losses, but made only a single $1,000 payment to the brokerage house. In late December, 1984, the government brought this criminal prosecution against Buchbinder for engaging in mail fraud under 18 U.S.C. § 1341.[2]

At trial, one of Buchbinder's defenses was that he was extremely depressed in September 1982 and could not formulate the specific intent to defraud Paine Webber.[3] Specifically, in 1979 his young son was involved in a serious traffic accident that left his son a quadriplegic and as a result of his son's extreme paralysis and the increasing financial pressures caused by his son's mounting medical bills, Buchbinder became severely depressed. His son Steven, who was 15 years old at the time of the trial, testified at trial, with the aid of a respirator, that after the accident his father became extremely depressed and would not play with him anymore. Buchbinder's wife also testified that her husband was emotionally devastated by the accident and the ensuing medical expenses and that in the summer of 1982, just prior to his fraudulent trading activity, Buchbinder threatened to commit suicide and periodically went "in a closet sometimes with his gun and played like Russian roulette with it, and just a lot of anger." Tr. at 472. She also testified that her husband was attempting to repay his past debts and that he was not the type of person who would deliberately attempt to defraud another person. *Id.* at 475.

Buchbinder also attempted to introduce testimony of a psychiatrist, Dr. Littner, and a psychologist, Dr. Arbit, each of whom examined Buchbinder just prior to trial and would have testified, if allowed, as to the affect the defendant's depression had on his state of mind at the time of the alleged crime. This testimony was not allowed as the defendant had failed to give the government timely notice, pursuant to Fed.R.Crim.P. 12.2(b),[4] that he intended to

---

1. Several weeks before opening his trading account at Paine Webber, Buchbinder bounced a $30,000 check payable to the Commonwealth Commodities Bank, drawn on his Canadian Imperial Bank account.

2. The wire fraud charges arose out of the telephone calls made by Paine Webber to New York at the request of Buchbinder to place orders for the commodities contracts.

3. Buchbinder does not claim that he was insane at the time of his criminal activity.

4. Federal Rule of Criminal Procedure 12.2(b) states:

 "If a defendant intends to introduce expert testimony relating to a ... mental condition of the defendant bearing upon the issue of his guilt, he shall, within the time provided for the filing of pretrial motions ... notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk."

present expert testimony concerning his mental condition at the time of the alleged criminal activity. Specifically, the defendant filed a motion with the district court on March 29, 1985, pursuant to Fed.R.Crim.P. 12.2(b), only two and one-half weeks before trial, seeking leave to file a motion of notice of intent to present expert psychiatric testimony concerning the defendant's mental condition at the time of the alleged crime. On April 18, 1985, the district court ruled that since the defendant previously failed to timely file a motion concerning his intent to present expert psychiatric testimony on any of the three earlier dates set for the filing of the defense pre-trial motions, the defendant would be barred from introducing the testimony of the expert witnesses. At trial Dr. Littner testified pursuant to an offer of proof in the absence of the jury that Buchbinder suffered from severe depression resulting from his son's accident that manifested itself in severe chronic depression of a neurotic nature, self-destructive impulses and poor judgment; Dr. Littner also stated that because of Buchbinder's severe depression in his medical opinion Buchbinder was unable to form the requisite specific intent in 1982 to defraud Paine Webber. Dr. Arbit, a psychologist, also testified pursuant to an offer of proof that Buchbinder was a man of superior intellectual ability but was suffering from chronic depression that would have a significant effect upon his judgment. Tr. at 273. Further, Dr. Arbit stated that he could not come to the conclusion that Buchbinder was unable to conform his conduct to "the dictates of the law." Tr. at 274.

On appeal, defendant argues (1) that the district court denied him his Sixth Amendment right to present a defense when it excluded the testimony of the expert witnesses for failure to comply with Fed.R. Crim.P. 12.2(b) since the government did in fact have actual notice that he was intending to present psychiatric testimony concerning his mental condition; (2) that the district court erred in excluding testimony as to the defendant's psychiatric condition dealing with his extreme state of depres-

sion in 1980 and 1981, the year prior to his fraudulent trading activities, and in excluding testimony that he stopped making the restitutionary payment to Paine Webber on the advice of his counsel; (3) that he was not provided with effective assistance of counsel in violation of the Sixth Amendment as his trial attorney failed to timely file the Rule 12.2(b) motion notifying the government of his intent to present expert witnesses at trial to testify as to his mental condition at the time of the alleged crime; and (4) that the prosecutor's closing argument constitutes reversible error.

## II

### Fed.R.Crim.P. 12.2(b)

Buchbinder contends that even though the notice of intent to present psychiatric expert testimony as to his mental condition was not timely filed, the government did in fact have actual notice that he intended to present such testimony and thus the "mechanistic application" of Rule 12.2(b) and (d) to exclude the psychiatric testimony deprived him of his Sixth Amendment right to present a defense. *Cf. Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). The record reveals that the court held a pre-trial conference on January 2, 1986 to schedule the filing of motions and that defense counsel notified the government prosecutor that he intended to "explore the possibility of a psychiatric evaluation of the defendant toward offering psychiatric testimony of defendant's mental condition." (Defendant's motion in response to Government's motion *in limine* to exclude expert testimony at page 1 filed April 16, 1985.) In spite of the court's direction that all pre-trial motions be filed by January 23, 1984, the defendant failed to present his motions. The time for filing the pre-trial motions was extended to February 25, 1984, and once again defense counsel failed to file any pre-trial motions. On March 1, 1985, the defendant filed a motion with the court requesting additional time prior to the setting of a trial date in order that he might be allowed to file addi-

tional motions and one of the reasons he gave in writing for this requested extension was that "defense counsel has arranged for a psychiatric evaluation and psychological testing of the defendant...." (Defendant's Motion for Additional Status Time, March 1, 1985.) At the hearing held on March 5, 1985 concerning these pending defense motions, defense counsel advised the government that he had "arranged some evaluations of my client by professional people." The court set a trial date of April 18, 1985 and granted the defendant additional time until March 12, 1985 to file the remainder of his pre-trial motions. Defense counsel did not inform the court when he intended to have the defendant examined by the defense experts nor did he complain that the final March 12, 1985 filing date for pre-trial motions was unreasonable. On March 29, 1985, the defendant filed his motion notifying the government of his intent to present expert psychiatric and psychological testimony as to his mental condition, only two and one-half weeks before trial, and the reports of the two doctors were not delivered to the court and the government until April 5 and 10, 1985, one week before trial. In light of the defendant's repeated failure to timely file his motion, the court reasoned that if it were to allow the defense to present its expert testimony at that late date it would cause further delay of the case as the government would then require additional time to procure its own experts to examine and prepare their reports of the defendant's condition; thus, the district court excluded the expert's testimony.[5]

Federal Rule of Criminal Procedure 12.-2(b) requires that if the defendant intends to introduce expert testimony relating to his mental condition at the time of the crime, defense counsel must notify the attorney for the government "in writing" "within the time provided for the filing of pre-trial motions or at such time as the court may direct...." The rule further states that "the court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate." Also, Rule 12.2(d) states that "[i]f there is a failure to give notice when required by subdivision (b).... the court may exclude the testimony of any expert witness offered by the defendant on the issue of his mental condition." These rules state the court "may" take such action as may be appropriate under the circumstances, and courts interpreting Fed.R.Crim.P. 12.2 have held that a district court's decision to exclude psychiatric testimony bearing upon the mental condition of the defendant is reversible only if the court abused its discretion in excluding this evidence. *United States v. Veatch,* 647 F.2d 995 (9th Cir.1981); *United States v. Edwards,* 90 F.R.D. 391 (E.D.Va.1982). *See also United States v. Dill,* 693 F.2d 1012, 1015 (10th Cir.1982) (abuse of discretion standard governs exclusion of evidence under Rule 12.2(a)).[6]

---

**5.** In the report filed with government, Dr. Littner seemed to conclude that the defendant became a compulsive gambler in an attempt to solve his severe financial problems and to ward off his depression. (Government's motion to exclude expert testimony at 9. This report is not part of the record here on appeal.) The government, in its motion to exclude Dr. Littner's testimony, argued that this defense was irrelevant, citing several court decisions holding that compulsive gambling as a defense is irrelevant as a matter of law in determining whether a defendant could form the requisite intent to steal. *See United States v. Gould,* 741 F.2d 45 (4th Cir.1984); *United States v. Torniero,* 735 F.2d 725 (2d Cir.1984); *United States v. Lewellyn,* 723 F.2d 615 (8th Cir.1983); *United States v. Carmel,* Doc. No. 84 CR 508 (N.D.Ill. Jan. 3,

1985). The defendant did not offer the defense of compulsive gambling in his offer of proof at trial.

**6.** The defendant argues that these cases are distinguishable since the notice given to the government by the defendants of their intent to present expert testimony occurred on the eve of the trial. *See, e.g., United States v. Veatch,* 647 F.2d 995 (9th Cir.1981) (notice of intent to rely on insanity defense given on day prior to trial). While the abuses of the filing deadlines were much more severe in these cases, the central question remains whether the trial court abused its discretion in excluding the psychiatric testimony. This analysis requires that we examine the circumstances of each case individually.

Buchbinder argues that the district court abused its discretion in excluding the expert witnesses' testimony as the government had actual notice in January of 1985 of his intent to present expert evidence on his mental condition when his trial counsel advised the government at the pre-trial conference that the defendant "intended to explore the possibility of the psychiatric evaluation toward offering psychiatric testimony...." Buchbinder further notes that his trial counsel's mention of the fact on March 5, 1985 that he was to undergo psychiatric examination placed the government on notice that he would present expert testimony concerning his mental condition at trial. Thus, Buchbinder argues that the government was put on notice and that "[t]his rule [Rule 12.2(b)] does not require him to specify the exact mental disease, or the exact manner that the mental condition had a bearing on the issue of guilt." Buchbinder's brief at 15.

 Buchbinder is correct in asserting that Rule 12.2(b) does not require him to specify the "exact mental disease" from which he is suffering. However, this does not mean that his trial counsel complied with the spirit of Rule 12.2 when he told the government in early January that he "intended to explore the possibility of a psychiatric examination" and when he noted on March 5, 1983 that Buchbinder was to undergo psychiatric examination. These statements merely informed the government that Buchbinder may present expert testimony; this "notice" never apprised the government that the defense would in fact present expert witnesses or the general substance of their testimony. One of the reasons that Congress enacted Rule 12.2(b) was to enable the government to prepare for cross-examination of the defendant's expert witnesses and to present any rebuttal witnesses to counter the defense expert's testimony. *See* Conference Committee Notes, H.R. 94–414, 1983 amendment to Rule 12.2(b) (noting that lack of notice "would have meant that the government would not have been equipped to cross-examine the expert, that any expert called by the government would not have had an

opportunity to hear the defense expert testify and that the government would not have had an opportunity to conduct the kind of investigation needed to acquire rebuttal testimony on defendant's claim ..." concerning his lack of mental capacity.) Obviously, the government cannot conduct its own investigation into the validity of the defense of lack of mental capacity and decide if it will present expert witnesses in rebuttal until such time as it has knowledge of the psychiatric and psychological evidence the defense intends to present. In this case, defense counsel failed to file his notice of intent to present expert testimony as to the defendant's mental state until March 29, 1985, three weeks after a third extension for filing the pre-trial motions and only two weeks before trial, and did not provide the government with the psychologist's report until April 5 and the psychiatrist report until April 10, 1985, just one week before trial. The only excuse offered by defense counsel for his failure to file timely written notice was the fact that the government had "actual" notice of his intent to present expert testimony. As just discussed this "actual" notice was not sufficient notice in this case as the defendant failed to file his motion in writing "within the time periods allowed [by the court] for the filing of pretrial motions." Fed.R.Crim.P. 12.2(b). It is evident that the government did not have sufficient time prior to trial to have the defendant examined by its own expert witnesses and to prepare psychiatric testimony of its own concerning the defendant's condition to rebut the defense expert's testimony if necessary.

██ Further, the district court noted at trial that while he would not allow the defense expert witnesses' testimony as to Buchbinder's mental condition, it would allow Mrs. Buchbinder and her son to testify as to the defendant's state of depression at the time of the alleged criminal activity. As previously noted, Mrs. Buchbinder testified that her husband was extremely depressed due to her son's accident and the resulting medical bills, that he contem-

plated suicide and had in fact played Russian roulette in the family closet. Buchbinder's son Steven also testified that his father was extremely depressed after his accident. Thus, the circumstances of his son Steven's accident causing Buchbinder's depression and the extent of his depression were presented to the jury. From this evidence defense counsel was able to argue to the jury that the defendant was severely depressed and that he was unable to form the necessary intent to defraud Paine Webber. Tr. at 562, 570–71. The defendant was not deprived of the substance of his defense at trial and thus we refuse to hold that under the circumstances of this case the district court abused its discretion in refusing to allow the expert witnesses to testify when the defendant failed to give timely notice as required by Rule 12.2(b).[7]

*Other Evidentiary Issues*

■ On the direct examination of Sam Buchbinder's father, defense counsel attempted to elicit testimony of events in Sam's life in 1980 and 1981 that were caused as a result of Sam's depression. The court ruled that it would allow testimony only as to the defendant's state of depression at "some time reasonably close to the dates of the alleged acts" in September of 1982. Tr. at 426. Buchbinder contends that this ruling precluded him from introducing evidence of those events in his life during 1980 and 1981 that resulted from his depression and that it was critically important for the jury to understand the continuing nature of this depression from 1979 through September, 1982, the time of the alleged crime. As previously noted, the district court did allow Buchbinder's wife and son to testify as to the extent of his depression in 1982, and the fact that this depression resulted from his son's severe injuries suffered in 1979. Thus the jury was fully apprised of the nature of Buchbinder's depression and its suspected cause. The fact that the depression evidenced itself in 1980 and 1981 in the form of the defendant leaving home for substantial periods of time and his wife having an affair with another man cannot be described as relevant to the jury's understanding as to the extent of Buchbinder's alleged depression since these are merely cumulative instances of how Buchbinder's depression manifested itself. A district court is granted wide latitude in determining what evidence is relevant, *United States v. Peco,* 784 F.2d 798, 800 (7th Cir. 1986) (citing *United States v. West,* 670 F.2d 675, 682 (7th Cir.), *cert. denied,* 457 U.S. 1139, 102 S.Ct. 2972, 73 L.Ed.2d 1359 (1982)), and we cannot say that the district court abused its discretion in refusing to admit evidence as to the defendant's activities in 1980 and 1981 resulting from his depression.

The defendant also contends that the district court erred when it excluded "as irrelevant evidence, that [the] defendant, who had agreed to make restitution long before the criminal charges were brought, ceased to make restitution on advice of counsel. Tr. (368–370, 453–455)." Buchbinder's Brief at 31. Defendant contends that this evidence was relevant as it demonstrated the defendant's lack of intent to defraud as he was willing to repay Paine Webber for the losses. Our examination of the record reveals that trial counsel never argued that he would introduce testimony to the effect that he stopped the restitutionary payments on the advice of his counsel. Instead, defense counsel argued for the admission of the offer and acceptance of judgment between Paine Webber and Buchbinder in Paine Webber's civil suit against Buchbinder. The court found that this evidence was irrelevant since the defendant had earlier introduced in evidence the previously signed promissory note wherein he agreed to repay Paine Webber for the outstanding balance of his trading account. Thus, the defendant was not precluded from introducing the agreement to repay Paine Webber as evidence of his lack of intent to defraud.

---

7. As discussed in the section of this opinion addressing the ineffective assistance of counsel, much of the defense expert's testimony was, in any event, inadmissible.

*Ineffective Assistance of Counsel*

Buchbinder next contends that he was denied effective assistance of counsel due to his trial counsel's failure to provide timely notice to the government of his intent to introduce expert psychiatric testimony concerning his mental condition at the time of the crime. The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) recently set forth the standards for evaluating whether or not the defendant has been deprived of effective assistance of counsel. The analysis involves two steps.

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Id.* at 2064. In *United States v. Noble,* 754 F.2d 1324 (7th Cir.1985), we stated:

"Under the first prong of the analysis, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness'.... This showing includes identifying 'the acts or omissions of counsel that are alleged not to have been the results of reasonable and professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance....' The second prong of the analysis requires that the defendant 'affirmatively prove prejudice....' This requires that 'there is a reasonable probability that but for counsel's unprofessional errors, the results of the proceedings would have been different. A reasonable probability is a probability sufficient to undermine confidence in the out-

come....' In setting out this two pronged analysis the *Strickland* Court noted that 'there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.' "

*Id.* at 1355 (quoting *Strickland,* 466 U.S. at 688–93, 104 S.Ct. at 2065–67).

█ The underlying assumption in Buchbinder's argument that he was denied effective assistance of counsel is that "but for" his attorney's failure to timely file notice of his intent to present expert witness testimony concerning his mental state, such evidence would have been admissible. As argued by Buchbinder in his brief, the main reason he wished to introduce the expert's testimony was to prove that he "did not have the specific mental state necessary to commit the offense." Buchbinder's Brief at 35. The most critical portion of the expert testimony that Buchbinder sought to introduce concerning the defendant's ability to form intent to commit the crime, however, would have been inadmissible under the recently enacted Fed.R.Evid. 704(b):[8]

"No expert testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone."

While the defense experts would not be allowed to express an opinion as to whether Buchbinder had the requisite state of mind to defraud Paine Webber under Rule 704(b), this rule would not have prevented them from testifying as to the extent of his depression caused by his son's accident. However, expert testimony is admissible only if "the specialized knowledge [of the expert] will assist the trier of fact to understand the evidence or to determine a fact in

**8.** Federal Rule of Evidence 704(b) was enacted in Pub.L. 98–473, Title II, § 406 on Oct. 12, 1984, 98 Stat. 2067, and was in effect at the time of this trial.

issue...." Fed.R.Evid. 702. *See also West*, 670 F.2d at 682. In this case, Dr. Littner testified during his offer of proof that the defendant suffered from severe depression caused by his son's accident and that this depression was of a neurotic nature that manifested itself in self-destructive impulses and poor judgment. However, as detailed earlier in this opinion, Buchbinder's wife and son had testified as to their observations of his state of mental depression. Thus it was brought to the jury's attention that the cause of Buchbinder's depression was his son's paralysis resulting from an accident in 1979 and that the defendant suffered from self-destructive impulses. It is not readily apparent how Dr. Littner's testimony "would [have] assist[ed] the trier of fact to understand the evidence...." under the facts of this case. Fed.R.Evid. 702.

It is true that the testimony of the defense experts may have added an aura of credibility to Buchbinder's defense that he was so depressed he was unable to form the intent to defraud. However, the district court may have excluded the expert witness' testimony in this case under Fed. R.Evid. 403 since the potential prejudice resulting from the cumulative evidence concerning the cause and extent of Buchbinder's condition may have outweighed its relevance. *See United States v. Purham*, 725 F.2d 450, 459 (8th Cir.1984) (noting that "the aura of reliability and trustworthiness that surrounds scientific evidence [may] outweigh any small aid the expert testimony might ... provide"). In fact, the expert's testimony may have in fact hurt the defendant's case since Dr. Littner, the psychiatrist, testified on cross-examination during the offer of proof that Buchbinder told him the reason he wrote the fraudulent checks was not because he was depressed and did not know what he was doing, but that Paine Webber had been engaging in unauthorized trading in his account and thus he stopped payment on the checks. Thus, the defendant himself

offered a rational excuse to the doctor to explain his actions and did not claim that his mental state was such that he could not comprehend the significance of his actions. Further, although Dr. Littner stated that Buchbinder's depression would manifest itself in poor judgment in his trading activities, the doctor testified on cross-examination that he did not have a great deal of knowledge about Buchbinder's trading activities, in fact he did not know whether Buchbinder's trading was highly speculative or minimally risky. Tr. at 55. Dr. Littner also testified on cross-examination that the defendant never told him that he also withdrew over $40,000 from his account after writing worthless checks deposited in his trading account at Paine Webber. Tr. at 55–56. Also, Dr. Arbit, the psychologist, testified during an offer of proof that he could not conclude from his examination of Buchbinder that Buchbinder was incapable of conforming his "conduct to the dictates of law." Tr. 274, 276. Finally, both doctors examined Buchbinder for only a short period of time in March 1985, two and one-half years after the crime.[9] The district court commented after completion of the offers of proof that the expert witnesses had been effectively cross-examined, (Tr. at 445), thereby indicating the court may have excluded their testimony regardless of defendant's failure to give timely notice as the jury could decide the issues of Buchbinder's intent without the experts' assistance. Thus, Buchbinder has failed to demonstrate to this court that "but for" his counsel's error to timely file his motion notifying the government of his intention to present expert testimony as to his mental state, the result of this trial would likely have been different because a great deal, and possibly all, of that testimony was inadmissible. To the extent that the psychiatric testimony might have been admissible had timely notice been filed (testimony of depression), it

---

**9.** Dr. Littner examined Buchbinder three separate times in March 1985 for a total of three hours; Dr. Arbit conducted tests and conducted an interview on two separate dates in March, 1985.

would have been cumulative and might actually have hurt the defendant's case.

### Closing Arguments

■ Buchbinder next contends that a single remark made by the prosecutor in his closing argument constituted gross misconduct and thus is reversible error. The prosecutor argued:

"Take a moment and look at what the defense was in this case. The defendant's father testified, and his wife testified, and his son testified. None of them knew anything about the relationship between Paine Webber and the defendant, whether the defendant did anything to defraud Paine Webber or not. They didn't have any testimony on that. So you have to ask yourselves why was that testimony offered? Ladies and gentlemen, that testimony was offered solely for the purposes of trying to win your sympathy. All these people testified to was that in Christmastime of 1979, this family suffered a horrible tragedy, and there is no question that what this family suffered in 1979 was a horrible tragedy. What, ladies and gentlemen, does that have to do with the defendant's dealings with Paine Webber two-and-a-half years later? Nothing. Absolutely nothing. You didn't hear a single witness in this case testify that there is any link whatsoever between the terrible tragic family situation of this defendant and his reaction to it. The testimony was that he was depressed in one respect. Not one person testified to any link between that accident and his reaction to it and what happened in this case. No one did. No one said he didn't understand this information was phony, he thought he had the money because of the accident or his reaction to it. *This is no link. The reason you heard no testimony about a link is because it simply doesn't exist.* There is no testimony to support." (Tr. 549–550) (Emphasis added.)

It is well accepted that a party may argue during closing argument any reasonable inferences to be drawn from the evidence presented at trial. *United States v. Carter,* 720 F.2d 941, 950 (7th Cir.1983); *United States v. McPartlin,* 595 F.2d 1321, 1360 (7th Cir.1979). Since the defense witnesses testified only as to the extent of Buchbinder's depression and not as to how this depression related to his trading activities, it was proper for the government to argue that there was no testimony presented to support the link between the alleged depression and the fraudulent trading activity. Defense counsel responded in kind in his closing argument that because of Buchbinder's depressed condition, he was unable to formulate the necessary intent to defraud Paine Webber. Thus, the majority of the closing argument was proper. However, the prosecutor's single statement that the reason the jury did not hear testimony to establish the link between the depression and the fraud "is because it simply doesn't exist" is troubling. The jury could construe this remark to mean that the defense was unable to present any witness to establish this link. We have previously held that a reference to one party's failure to call a particular witness to testify is improper argument unless " 'the absent witness was peculiarly within the other party's power to produce,' and that the testimony of the absent witness 'would elucidate issues in a case.' " *United States v. Williams,* 739 F.2d 297, 299 (7th Cir.1984) (quoting *United States v. Mahon,* 537 F.2d 922, 926–27 (7th Cir.1976). *See also United States v. Bastone,* 526 F.2d 971, 988 (7th Cir.1975), *cert. denied,* 425 U.S. 973, 96 S.Ct. 2172, 48 L.Ed.2d 797 (1976). In this case, the absent witness was not peculiarly within the defendant's power to produce since the government was able to exclude a defendant's expert witnesses prior to trial. In evaluating claims of prosecutorial misconduct, "we are to consider the prosecutor's conduct not in isolation, but in the context of the trial as a whole, to determine if such conduct was 'so inflammatory and prejudicial to the defendant ... as to deprive him of a fair trial.' " *United States v. Howard,* 774 F.2d 838, 848 (7th Cir.1985) (quoting *United States v. Chaimson,* 760 F.2d 798, 809 (7th Cir.1985)). Since the

defendant has not attempted to demonstrate how this single statement made during the course of a one-week trial may have affected the trial's outcome and since evidence concerning the defendant's depression as it related to his ability to form the intent to defraud was squarely before the jury and the jury rejected this defense, we hold that the prosecutor's single statement in closing argument did not deny the defendant a fair trial.

The conviction of the defendant is AFFIRMED.