**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Paul Ray COX, Defendant-Appellant.**

**No. 85–5801.**

United States Court of Appeals,
Sixth Circuit.

Argued March 10, 1987.

Decided Aug. 21, 1987.

Joe F. Wright (argued), Hermansdorfer & Templeton, Ashland, Ky., for defendant-appellant.

Ronald E. Meredith, U.S. Atty., Louisville, Ky., Randy Ream (argued), for plaintiff-appellee.

Before LIVELY, Chief Judge, BOGGS, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

CELEBREZZE, Senior Circuit Judge.

Defendant-appellant Paul Ray Cox appeals his jury conviction for armed robbery of a federally insured bank in violation of 18 U.S.C. § 2113(d) (1982). Cox contends on appeal that the district court abused its discretion in denying his motion to file a belated notice of insanity defense, erred in permitting a psychiatrist to testify to the ultimate issue regarding Cox's mental state at the time of the bank robbery, and erroneously denied his request to instruct the jury that it could find Cox not guilty by reason of insanity. Finally, Cox asserts that he was denied the effective assistance of counsel at trial. We find that the district court properly denied Cox's motion to file a notice of insanity defense in the midst of trial, that the psychiatric expert did not testify as to whether or not Cox possessed the criminal intent necessary for a conviction in a manner offensive to the Federal Rules of Evidence, that Cox's failure to properly make insanity an issue at trial precluded an instruction or special verdict form permitting the jury to find the defendant not guilty by reason of insanity, and that Cox has failed to demonstrate the prejudice requisite for finding ineffective assistance of counsel. Accordingly, we affirm the judgment of conviction against Cox.

## I.

Viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), the following transpired. On October 19, 1984, the Fern Creek Branch of the Citizens Fidelity Bank and Trust Company, located on Bardstown Road in Louisville, Kentucky, was robbed. The perpetrator attempted to hide his face with a dark-colored child's undershirt, but this disguise slipped from the robber's face and was abandoned in the bank. Brandishing a handgun, the robber ordered everyone in the bank to lie on the floor with the exception of one teller, Betty Jackson, who was instructed to place all of the money she had in her drawer into a bag. She complied, but also inserted into the money bag a dye-bomb which was electronically activated by the doors of the bank as the robber made his escape. The robber dropped the bag of money in a neighboring yard after the dye-bomb exploded, and fled the scene of the crime in a blue and white pick-up truck.

A federal grand jury indicted Cox on January 8, 1985 of armed bank robbery violative of 18 U.S.C. § 2113(d), charging that he took $245.00 from the federally insured institution by assaulting and put-

ting in jeopardy the life of Ms. Jackson by the use of a dangerous weapon. At defense counsel's request, a psychiatrist was appointed by the district court to evaluate Cox's state of mind and criminal culpability for the acts charged, and the United States Bureau of Prisons was ordered to produce all the medical and psychological reports prepared about Cox during his two prior prison incarcerations for bank robbery. The psychiatrist, Dr. Green, diagnosed Cox as suffering from organic brain syndrome and organic mental disorder as a result of heavy, long-term drug use, a depressive disorder with associated anxiety, and an antisocial personality. Nevertheless, Dr. Green concluded that Cox was competent to stand trial and had not been motivated by his psychosis to rob the bank. The prison records indicated that Cox had exhibited bizarre behavior while incarcerated at the Federal Correctional Institution at Milan, Michigan, and had been diagnosed by psychiatrists there as delusional and schizophrenic, suffering acute psychotic episodes involving auditory and visual hallucinations.

Despite these indicia that Cox suffered from a mental illness, Cox neither notified the attorney for the government of his intention to rely on the defense of insanity nor filed a notice of insanity defense with the clerk of the district court. Instead, the defense strategy was to demonstrate that due to Cox's mental state, he was unable to form the specific intent requisite for a criminal conviction under section 2113(d). To this end, Cox introduced the testimony of Ramone Hernandez who, despite being a medical doctor, testified as a lay witness concerning Cox's bizarre behavior while he and the defendant were incarcerated together in the Jefferson County Jail. Cox's counsel next moved to introduce into evidence the Bureau of Prisons' medical records, through the testimony of Barbara Hall, the records custodian. The district court refused to admit this evidence, however, ruling that since insanity was not being raised as a defense, only evidence showing Cox's mental state at the time of the bank robbery and relevant to proving or disproving the specific intent to commit

the crime charged was admissible. At this point, Cox's defense counsel moved to file a belated notice of insanity defense, but the district court also denied this motion.

Cox's final witness was Dr. Green, from whom Cox attempted to elicit an opinion as to whether the defendant's mental illness impaired Cox's ability to form the necessary criminal intent. Although Cox was prevented from obtaining such a legal conclusion from the witness, Dr. Green was permitted on cross-examination to describe Cox's psychotic illness and express an opinion that Cox was not suffering from delusions or hallucinations at the time of the bank robbery. On recross-examination, Dr. Green was also permitted to read from his pretrial psychiatric evaluation of Cox, stating that at the time of the bank robbery Cox was aware of the wrongfulness of the act, was not acting as a result of any mental retardation or mental illness which prevented him from conforming his conduct to the dictates of the law, and that Cox's ongoing delusions and hallucinations were not the causes of his allegedly robbing the bank.

Apart from the evidence relating to Cox's mental state and mental illness, the evidence demonstrating that Cox had, in fact, robbed the bank was overwhelming. One of the bank tellers, Donna Hammell, picked Cox's photograph from a photo array shown her during the F.B.I.'s investigation of the robbery and made a positive in-court identification of Cox as the robber. Several bystanders testified that a blue and white truck matching the general description of Cox's vehicle sped from the scene immediately after the robbery. Two of Cox's sisters testified that he had admitted to them the day following the crime that he had robbed the Fern Creek bank, describing the T-shirt he used as a disguise but which slid off his face during the robbery, and stating that a dye-bomb had gone off. The sisters also testified that Cox and his brother-in-law had painted the pick-up truck black the day after the robbery. Finally, an F.B.I. agent who interviewed Cox while the defendant was housed in a Florida jail testified that Cox confessed to, and

supplied details concerning, the bank robbery.

Following the jury's guilty verdict on August 16, 1985, Cox filed a *pro se* motion for a new trial grounded on ineffective assistance of counsel, contending that his trial attorney had failed to investigate, file notice of, and rely on a defense of insanity despite convincing evidence of Cox's mental illness. Cox renewed this motion during his sentencing hearing on August 30, arguing that the insanity defense was the only defense available to him, and would have been successful by showing that because of the mental illness he was unable to control his actions. The district court overruled the new trial motion, finding that counsel had "performed outstanding services" in offering Cox a defense, and sentenced the defendant to twenty-five years imprisonment. This appeal ensued.

## II.

Cox's first contention on appeal is that the district court abused its discretion in refusing to permit the defendant to file a belated notice of insanity defense after the court denied Cox's motion to admit into evidence the Bureau of Prisons' records illustrating his severe mental illness. Although conceding that he had failed to file a notice of insanity defense in a timely fashion, as provided in Federal Rule of Criminal Procedure 12.2(a), Cox nevertheless argues that the trial court erred in not permitting him to file such a notice in the midst of trial and rely on an insanity defense, because the government was fully aware prior to trial of the plethora of evidence demonstrating Cox's mental illness and was prepared to respond to an affirmative defense of insanity at the time of trial. In other words, Cox asserts that since the purpose of the Rule requiring a timely notice of insanity defense—to give the government time to prepare to meet such a defense—would not have been violated in the instant case, the district court abused its discretion in not permitting the belated notice. We disagree.

Rule 12.2(a) of the Federal Rules of Criminal Procedure states in full:

Defense of insanity. If a defendant intends to rely upon the defense of insanity at the time of the alleged offense, the defendant shall, within the time provided for the filing of pretrial motions or at such later time as the court may direct, notify the attorney for the government in writing of such intention and file a copy of such notice with the clerk. *If there is a failure to comply with the requirements of this subdivision, insanity may not be raised as a defense.* The court may *for cause shown* allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other order as may be appropriate.

Fed.R.Crim.P. 12.2(a) (emphasis added). "By its terms, ... Rule 12.2(a) contemplates that a defendant who fails to comply with the time requirements waives his right to an insanity defense." *United States v. Duggan,* 743 F.2d 59, 80 (2d Cir. 1984); *see also Scarborough v. United States,* 683 F.2d 1323, 1325 (11th Cir.1982), *cert. denied,* 459 U.S. 1220, 103 S.Ct. 1225, 75 L.Ed.2d 460 (1983); *United States v. Veatch,* 674 F.2d 1217, 1224 (9th Cir.1981), *cert. denied,* 456 U.S. 946, 102 S.Ct. 2013, 72 L.Ed.2d 469 (1982); *United States v. Caplan,* 633 F.2d 534, 539 (9th Cir.1980). Although "[i]t is within the district court's discretion to grant or deny a defendant relief from the exclusion provision of Rule 12.2(a)," *Veatch,* 674 F.2d at 1224; *cf. United States v. McLernon,* 746 F.2d 1098, 1115 (6th Cir.1984) (broad discretion to permit or deny expert testimony in the absence of an analogous filing under Rule 12.2(b)), the rule (again, by its own terms) permits relief by way of late filing of a notice of insanity defense only "for cause shown." *See Duggan,* 743 F.2d at 80. " 'Cause' consists not only of explanation for the belatedness of the party's action, but also of a showing of some merit in the position belatedly to be advanced." *Id.*

■ The record clearly shows that Cox failed twice to comply with the provisions of Rule 12.2(a). First, he failed to file a timely notice of an intention to rely on an insanity defense prior to trial. Second, when seeking to file a belated notice, Cox

showed no "cause" to support the allowance of a late filing. He offered no explanation for waiting until the middle of trial to seek permission to file a notice of insanity defense. Nor would there appear to be any reason why Cox could not have filed a notice of insanity defense sometime prior to trial, since Dr. Green's psychiatric evaluation of Cox had been filed with the district court on May 23, 1985, and the Bureau of Prisons' medical data evidencing Cox's psychotic mental state had been known to the defense well in advance of Cox's trial on August 15.

In addition, Cox failed to show the merit of an insanity defense. As part of the Insanity Defense Reform Act of 1984, Pub.L. No. 98–473, §§ 401–06, 98 Stat. 1837, 2057–68, Congress created a new statute, 18 U.S.C. § 20 (Supp. II 1984) (renumbered section 17 by the Criminal Law and Procedure Technical Amendments Act of 1986, Pub.L. No. 99–646, § 34(a), 100 Stat. 3592, 3599), making insanity a defense to a federal prosecution only if the defendant, at the time of the alleged crime, as a result of severe mental disease or defect, "was unable to appreciate the nature and quality or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense."[1] 18 U.S.C. § 20(a) (Supp. II 1984). In addition, insanity was made an affirmative defense which the criminal defendant has the burden of proving by clear and convincing evidence.[2] 18 U.S.C. § 20(b) (Supp. II 1984). Thus, when Cox requested permission to file a belated notice of insanity defense, it was incumbent upon him to show the district court how the evidence of his mental illness would have sustained his burden of establishing an affirmative defense of insanity under the new federal definition.[3] Since Cox made no such showing, he failed to furnish the district court with the "cause" to support a late filing under Rule 12.2(a). Cf. Duggan, 743 F.2d at 80–82 (affirming a district court's denial of a late filing under Rule 12.2(a) when the defendants presented only conclusory statements that they were afflicted with posttraumatic stress disorder and failed to show in what way that could have relieved them of criminal responsibility).

In light of Cox's double noncompliance with the plain language of Rule 12.2(a), his appeal to the ultimate purpose of the Rule is unavailing. See Duggan, 743 F.2d at 82 (no abuse of discretion to deny late filing under Rule 12.2(a) when no "cause" shown); United States v. Dill, 693 F.2d 1012, 1015 (10th Cir.1982) (same); Veatch, 674 F.2d at 1224–25 (same); cf. United States v. Paradis, 802 F.2d 553, 564 (1st Cir.1986) (no abuse of discretion to deny expert testimony on defendant's mental state if noncompliance with Rule 12.2(b)); United States v. Buchbinder, 796 F.2d 910, 914–15 (7th Cir.1986) (same); McLernon, 746 F.2d at 1115 (same); United

---

**1.** Prior to this legislation, this circuit had adopted the American Law Institute's definition of insanity which included both "volitional" and "cognitive" prongs, and thus had delineated the questions appropriate for a jury's consideration when a defendant offered an insanity defense as: (1) whether the defendant was suffering from a mental illness at the time of the crime, (2) whether the illness prevented the accused from knowing the wrongfulness of his act, *and* (3) whether the mental illness prevented the accused from conforming his conduct to the requirements of the law he was violating. *United States v. Smith,* 404 F.2d 720, 727 (6th Cir. 1968); *see also United States v. Campbell,* 675 F.2d 815, 820 (6th Cir.), *cert. denied,* 459 U.S. 850, 103 S.Ct. 112, 74 L.Ed.2d 99 (1982). Section 20 of the 1984 Act modified this definition of legal insanity by abandoning the "volitional prong." *United States v. Hillsberg,* 812 F.2d 328, 332 (7th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987); *United States*

**2.** Prior to 1984, when a defendant made sanity an issue, the government had the burden of proving beyond a reasonable doubt that the defendant was sane at the time he committed the alleged crime. *Davis v. United States,* 160 U.S. 469, 485–88, 16 S.Ct. 353, 357–58, 40 L.Ed. 499 (1895); *In re Newchurch,* 807 F.2d 404, 409 (5th Cir.1986); S.Rep. No. 225, 98th Cong., 2d Sess. 224, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3406.

**3.** The effective date of section 20 was October 12, 1984. Since the crime with which Cox was charged occurred on October 19, 1984, and he was brought to trial in August, 1985, section 20 unquestionably applied in this prosecution.

*v. Rosenheimer,* 807 F.2d 107, 111 (7th Cir.1986) (per curiam); S.Rep. No. 225, 98th Cong., 2d Sess. 225, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3407.

*States v. Edwards*, 90 F.R.D. 391, 397 (E.D.Va.1981) (no abuse of discretion absent compliance with Rule, "even where a continuance is a fully conceivable alternative"). Although Cox correctly notes that the purpose of Rule 12.2 "is to give the government time to prepare to meet the issue, which will usually require reliance upon expert testimony," Fed.R.Crim.P. 12.2 advisory committee's note, this purpose is presumably effectuated by a defendant's compliance with the terms of the Rule itself by making a pretrial filing. *Cf. Buchbinder*, 796 F.2d at 915 (government's "actual" notice of the defendant's intention to introduce expert testimony does not absolve defendant of the responsibility to comply with Rule 12.2(b)). Moreover, a criminal defendant is afforded a safety valve to avoid waiver of the insanity defense in the form of a late filing, provided there is "cause shown" to support the district court's grant of a belated notice. Nothing in Rule 12.2(a) suggests, however, that a trial court must inquire into the government's preparedness to meet an insanity defense and grant the defendant's request to file a late notice if the government would not be prejudiced, when the defendant utterly fails to explain the reason for the late filing or to show any merit in the proposed insanity defense. Accordingly, it cannot be said that the district court abused its discretion in refusing to permit Cox to file a belated notice of insanity defense.

### III.

Cox's second contention is that the district court erred in refusing to instruct the jury that it could find the defendant not guilty by reason of insanity. According to Cox, the evidence before the jury demonstrating his mental illness was sufficient to warrant such an instruction. Given our findings above, this issue is easily resolved. First, when enacting the Insanity Defense Reform Act of 1984, Congress was concerned over the fact that federal law contained no provision for a verdict or finding of not guilty by reason of insanity, thereby requiring juries to acquit defendants found to be insane and forcing local authorities to utilize civil commitment laws to confine the individuals. S.Rep. No. 225, 98th Cong., 2d Sess. 238–39, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3420–21. Accordingly, section 4242(b) of Title 18 was significantly amended to provide:

> Special verdict.—*If the issue of insanity is raised by notice as provided in Rule 12.2 of the Federal Rules of Criminal Procedure* on motion of the defendant or of the attorney for the Government, or on the court's own motion, the jury shall be instructed to find, or, in the event of a nonjury trial, the court shall find the defendant—
>
> (1) guilty;
>
> (2) not guilty;  or
>
> (3) not guilty only by reason of insanity.

18 U.S.C. § 4242(b) (Supp. II 1984) (emphasis added). A finding of insanity under section 4242(b) then triggers special procedures for committing the person so adjudged. *See* 18 U.S.C. § 4243 (Supp. II 1984). As the plain language of section 4242(b) shows, however, the giving of special instructions permitting a jury to find a defendant "not guilty only by reason of insanity" is contingent upon raising the issue of insanity at trial by noticing the defense under Rule 12.2. Having failed to either file a timely notice of insanity defense or obtain permission to file a belated notice, Cox was not entitled to the special jury instruction provided by this statute.[4]

### IV.

Cox's next contention on appeal is that the district court erred in permitting Dr. Green, on two occasions, to give his opinion regarding the ultimate issue of Cox's *mens rea* while allegedly committing the bank robbery. Specifically, on cross-examination by the government, Dr. Green was permitted to read from his previously prepared

---

**4.** In addition, apart from the application of section 4242(b), the district court, after precluding Cox from belatedly raising an insanity defense, was not then required to instruct the jury regarding the properly rejected defense. *See United States v. Winn*, 577 F.2d 86, 89 (9th Cir.1978).

report concerning his psychiatric examination of Cox. This testimony stated:

> In summary, it's my opinion that on or about the time of the alleged act Mr. Cox was aware of the wrongfulness of his act and was not acting as a result of any mental retardation or mental illness which would prevent him from performing [sic] his conduct to the dictates of the law.

Then, regarding Cox's hallucinations and delusions, Dr. Green testified: "I did not think that these delusions or hallucinations were the causing [sic] producing factor in his allegedly robbing the bank." Cox alleges that these statements violated Fed.R. Evid. 704(b), which states:

> No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

For the reasons which follow, we find that none of Dr. Green's statements constitute expert witness testimony impermissible under Rule 704(b).

First, Dr. Green's opinion that Cox was aware of the wrongfulness of his act directly addressed the matter of Cox's insanity as that defense is now codified. *See* 18 U.S.C. § 20(a) (Supp. II 1984). Thus, this opinion would have been impermissible testimony under Rule 704(b), if insanity had been raised by Cox as a defense in this case. The psychiatrist's opinion that Cox was not prohibited by his mental illness from conforming his conduct to the dictates of the law reached the issue of insanity as it had been defined in this Circuit prior to the enactment of the new federal definition.[5] Cox's failure to file a timely notice of insanity defense, and the district court's

proper refusal to permit Cox to file a late notice, however, eliminated insanity as a defense in this case. Therefore, the ultimate issue of Cox's mental state was not his sanity or insanity, but his intent to rob the bank. Thus, to the extent that Dr. Green opined about Cox's legal sanity, his testimony did not amount to "an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto."

Dr. Green's testimony violated Rule 704(b) only if the doctor rendered an opinion as to whether Cox had the specific criminal intent to rob the bank. A review of the record, however, conclusively demonstrates that Dr. Green did not directly state an opinion or inference as to this matter. Despite two attempts by *Cox's* counsel to elicit an opinion from the expert as to whether the defendant possessed the requisite criminal intent, the district court promptly sustained objections to Dr. Green's rendering of such a legal conclusion. In addition, on redirect examination, Dr. Green testified that the determination of whether a person suffering from Cox's type of mental illness is capable of formulating a specific criminal intent is very difficult, and that he was unable to make such a determination based on his examination of the defendant and a review of Cox's mental history.

Finally, in our view, the specific testimonies which Cox challenges on appeal do not constitute opinions which accomplish indirectly what Rule 704(b) prohibits. Rule 704(b) was amended in 1984 for the purpose of eliminating "the confusing spectacle of competing expert witnesses testifying to directly contradictory conclusions as to the ultimate legal issue to be found by the trier of fact." S.Rep. No. 225, 98th Cong., 2d Sess. 230, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3412.[6]

---

5. *See supra* note 1.

6. The current version of Fed.R.Evid. 704 was amended by section 406 of the Insanity Defense Reform Act of 1984, Pub.L. No. 98–473, §§ 401–06, 98 Stat. 1837, 2057–68. Prior to the amendment, the scope of expert psychiatric testimony

was "governed by the cryptic disclaimer that 'testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.'" S.Rep. No. 225, 98th Cong., 2d Sess. 225, *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3407. Thus,

The amendment did not preclude psychiatrists from testifying as to their diagnoses of the mental conditions of criminal defendants. "Psychiatrists, of course, must be permitted to testify fully about the defendant's diagnosis, mental state and motivation ... at the time of the alleged act so as to permit the jury or judge to reach the ultimate issue about which they and only they are expert." S.Rep. No. 225, 98th Cong., 2d Sess. 231, *reprinted in* U.S.Code Cong. & Admin.News 3182, 3413. *See also* 11 J. Moore & H. Bendix, Moore's Federal Practice ¶¶ 704.1[4], 704.11 (2d ed. 1985). Thus, the practical effect of the Rule 704(b) amendment was not to change the quantum or quality of expert testimony utilized to convict an offender, *United States v. Prickett*, 790 F.2d 35, 37 (6th Cir.1986), but to change "the style of question and answer that can be used to establish both the offense and the defense thereto." *United States v. Mest*, 789 F.2d 1069, 1071 (4th Cir.), *cert. denied*, — U.S. —, 107 S.Ct. 163, 93 L.Ed.2d 102 (1986).

■ Dr. Green's opinion that Cox was capable of conforming his conduct to the dictates of the law, and his conclusion that the delusions and hallucinations symptomatic of Cox's mental illness did not cause Cox to rob the bank, to the extent that either or both opinions impinged on the issue of Cox's intent, only supplied the factfinder with data from which it could draw the ultimate legal conclusion. Neither opinion stated that Cox possessed the requisite intent for a conviction or negated a finding of no criminal intent, but merely provided the jury with an expert opinion to the effect that Cox's mental illness, and concomitant delusions and hallucinations, did not cause, or compel, Cox's act of bank robbery. As such, Dr. Green's testimony was not prohibited by Rule 704(b).

## V.

■ Cox's last argument on appeal is that his trial counsel was constitutionally ineffective by virtue of not filing a timely notice of insanity defense and pursuing such a defense on his behalf at trial. In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court determined that a convicted defendant must make two showings to establish ineffective assistance of counsel: (1) that counsel's performance was deficient, falling below the standard of reasonably effective assistance, and (2) that counsel's errors were prejudicial to the defense. *Id.* at 687–97, 104 S.Ct. at 2064–69; *see also Beasley v. United States*, 491 F.2d 687, 692–96 (6th Cir.1974). In deciding an ineffective assistance claim, a court need not address the two components of the claim in any order, or even address both components if an insufficient showing is made on one. *Strickland*, 466 U.S. at 697, 104 S.Ct. at 2069.

> In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.* In the instant case, we find Cox's ineffective assistance claim insufficient by failing to demonstrate that his counsel's alleged errors were prejudicial to his defense.

To satisfy the "prejudice prong" of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068. In the instant case, the burden is on Cox to "affirmatively prove prejudice" and show that his attorney's failure to pursue an insanity defense "actually had an adverse effect on the de-

under the old Rule, expert witnesses could testify that the defendant was "sane" or "insane," lacked the capacity to distinguish "right from wrong," or lacked the capacity to "conform his behavior to the requirement of the law." *Id.*

fense," *id.* at 693, 104 S.Ct. at 2067, by establishing a reasonable probability that the jury could have found him not guilty by reason of insanity. *See id.* at 695, 104 S.Ct. at 2068.

In our view, Cox has failed to demonstrate the reasonable probability that if an insanity defense had been pursued at trial, the jury would have found such a defense meritorious. At his sentencing hearing, when the district court entertained Cox's motion for a new trial based on ineffective assistance, Cox twice expressed the view that an insanity defense would have demonstrated that his mental illness rendered him incapable of controlling his actions. On appeal, Cox has addressed only the "deficient performance prong" of the *Strickland* test, apparently assuming that evidence of his psychosis, complete with delusions and hallucinations, would have likely caused a jury to find that Cox had met his burden of establishing insanity under federal law. Section 20 (now section 17) of Title 18 clearly demonstrates, however, that not every mental disease or defect negates criminal culpability. Specifically, section 20(a)'s elimination of the "volitional prong" of this circuit's former insanity definition [7] now permits defendants who because of mental illness are unable to conform their actions to the requirements of law to be convicted of crimes. *See United States v. Freeman,* 804 F.2d 1574, 1576 (11th Cir.1986). Cox has neither claimed nor made any showing that his particular type of mental illness rendered him unable at the time of the bank robbery "to appreciate the nature and quality or the wrongfulness of his acts." Thus, he has failed to establish a reasonable probability that if an insanity defense had been pursued at trial, the result of the proceeding would have been different. Accordingly, Cox's ineffective assistance claim must fail.

### VI.

In light of the foregoing, the judgment of conviction against Cox is AFFIRMED.

---

7. *See supra* note 1.