961 F.2d 1579
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES Of America, Plaintiff-Appellee,
v.
James A. FISHER, Defendant-Appellant.
 No. 91-5864.
 United States Court of Appeals, Sixth Circuit.
 May 1, 1992.
 
 Before KEITH and MILBURN, Circuit Judges, and ENSLEN, District Judge.*
 PER CURIAM:
 
 
 1
 Defendant James Archer Fisher, III ("Fisher") was charged and convicted following a jury trial in February 1990 for the offense of making a threatening communication to injure the person of the Honorable Thomas A. Wiseman, in violation of 18 U.S.C. § 876. For the reasons stated below, we AFFIRM.
 
 
 2
 This is a very rare case because Fisher, unlike most criminal defendants, seeks to remain in prison. Fisher readily admits to having committed the offense charged and says that he did so in order to obtain a sentence requiring him to remain in prison. Fisher's counsel argues that Fisher's conviction should be reversed because he suffers from a severe mental disorder which prevents him from appreciating the wrongfulness of his acts.
 
 
 3
 In June 1989, Judge Wiseman, who had never met Fisher, received a letter signed by Fisher threatening Judge Wiseman and his family. The letter stated in part that: "I would like to let you all know that when I get out in 1991 I will kill you and rape you. Plus, I will blow up your house. And I will kill and rape your whole family...." Fisher stipulated that he wrote the letters. Expert handwriting and fingerprint analyses confirmed that the writing was from Fisher.
 
 
 4
 It is also undisputed that Fisher wrote the threatening letter in order to receive an extended prison sentence. After he was charged for sending the letter to Judge Wiseman, Fisher wrote a letter to the court clerk, stating as follows:
 
 Dear Court Clerk:
 
 5
 I would like to explain something to you all. I don't want to get out of prison. I am happy where I'm at. I don't have to pay any bills or buy food and I want to stay in prison for the rest of my life, and I will keep on writing letters to judges telling them I'm going to kill them until I get enough time that I know I will not be getting out. I love prison, so keep me in prison for the rest of my life where I'm happy. And I would really like it if Judge Morton in Cookeville would give me a life sentence and tell me I'm not getting out. I don't care if you show this letter to Thomas Watson [Fisher's attorney]. He knows this. I really love prison and don't want to get out. Please help me out and keep me locked up for the rest of my life. I know what I'm doing when I write these letters to judges. And I don't mean anything by what I say to them. I know that I will get more time; that's why I write them. Please do me a favor and make sure I can stay in prison. I will just love you all for it. I beg you all to keep me in prison for the rest of my life. Thank you. James Fisher.
 
 
 6
 Fisher wrote another, similar letter to the U.S. Parole Commission expressing awareness of his actions and his desire to remain in prison.
 
 
 7
 Fisher's counsel argues that testimony at trial revealed that Fisher was insane at the time he wrote the letter to Judge Wiseman. At trial, two psychologists testified regarding Fisher's mental capacity. Both doctors testified that Fisher has an intelligence quotient of 75, which is "borderline intellectual functioning." Dr. Mitchell Stein testified that a mentally retarded person would have an I.Q. of 69 or below. A person with an I.Q. of 75 is "usually able to function in society, but in limited ways. They are more likely to, for example, seek or obtain lower level, unskilled labor type of positions.... They are able to get by okay in society, but at a fairly low level of achievement."
 
 
 8
 Dr. Stein and Dr. Rushdon A. Backer also concluded that Fisher has a "borderline personality disorder." Dr. Stein testified that this is a "pretty severe personality disorder ... on the borderline of between having problems and being psychotic." Based on these findings, Dr. Stein classified Fisher as "institutionalized," whereby he is unable to function in society and is very dependent on the support of structured environments. Dr. Stein stated that Fisher's level of dysfunction was "somewhere in the middle" of the borderline personality disorder classification, but was "not on the very severe end." Both Dr. Stein and Dr. Backer testified that Fisher may have attempted to manipulate the results of the tests they administered.
 
 
 9
 Dr. Stein also testified regarding Fisher's background in support of his theory that Fisher had become "institutionalized." He stated that Fisher grew up without the presence of his biological father, that he was allegedly abused by his father as an infant, that he was in special education classes in school and that he was later abandoned by his family when he told them that he was a homosexual.
 
 
 10
 The sole issue on appeal is whether the jury erred in finding that Fisher was sane. In determining whether a defendant is insane at the time of the commission of an offense, the defendant must establish by clear and convincing evidence that: 1) he suffered from a severe mental disease or defect; and 2) he was unable to appreciate the nature and quality of the wrongfulness of his acts. 18 U.S.C. § 17; United States v. Cox, 826 F.2d 1518, 1522 (6th Cir.1987), cert. denied, 848 U.S. 1028 (1988). On appeal we review the jury verdict to determine whether there was sufficient evidence, viewed in the light most favorable to the government, to uphold the verdict. Burks v. United States, 437 U.S. 1, 17 (1978).
 
 
 11
 The jury verdict in this case is amply supported by the evidence. Although the evidence suggested that Fisher may have suffered from some mental defect, the severity of that defect was disputed. Neither of the testifying psychologists concluded that Fisher was mentally retarded or psychotic. Although both found that he possessed only "borderline intellectual functioning," both psychologists stated that Fisher's letters showed that he could communicate his thoughts better than others with equal intelligence. The psychologists testified that Fisher carefully thought out the acts which led to his conviction and took steps to ensure that his letters would be delivered to the parties whom he had targeted. This evidence supported a conclusion that Fisher did not suffer from a severe mental disease or defect.
 
 
 12
 Moreover, the evidence substantially supported the finding that Fisher was able to appreciate the wrongfulness of his acts. He explicitly stated on a number of occasions that he understood the nature of his actions. In addition, his intellectual level and communicative abilities support the conclusion that he understood the wrongfulness of his conduct.
 
 
 13
 For these reasons, we AFFIRM the judgment of the Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee.
 
 
 
 *
 The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation