47 F.3d 1167
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Robert C. BUTLER, Petitioner-Appellee,
v.
Eileen HOSKING, Respondent-Appellant.
 No. 93-5976.
 United States Court of Appeals, Sixth Circuit.
 Feb. 22, 1995.
 
 Before: KEITH and RYAN, Circuit Judges, and JOHNSTONE, Senior District Judge.*
 DAMON J. KEITH, Circuit Judge.
 
 
 1
 Respondent-Appellant Warden Eileen Hosking ("Appellant") appeals the district court's grant of Petitioner-Appellee Robert C. Butler's petition for writ of habeas corpus. For the reasons stated below, we AFFIRM.
 
 I. Statement of the Facts
 
 2
 In 1977, a jury convicted Robert L. Butler ("Butler"), an African-American and former sociology instructor and doctoral candidate at the University of Tennessee, Knoxville, for the rape of a white female student. The student alleged that after she completed a test, she conversed with Butler and was invited to join him in a vaguely described experiment. According to the student, Butler placed two chairs in his office closet, and after they each sat in one, he requested she perform fellatio on him. Initially, she refused, but later acquiesced when Butler allegedly threatened her with a sharp object. After several minutes of fellatio, the victim alleged that Butler told her to stand and he removed her panties, forced her to sit on his lap, and penetrated her vaginally.
 
 
 3
 Butler had two trials in Tennessee. The student presented the above testimony at both trials and various witnesses corroborated her story.
 
 
 4
 At Butler's first trial, the state called Dr. Winn Henderson ("Dr. Henderson"), an emergency room doctor employed at the University of Tennessee, Knoxville, who testified that he examined the victim after the alleged rape and although he found sperm present, he saw no signs of forced sexual intercourse. The defense called several witnesses who testified that they saw Butler the day of the alleged rape and noticed nothing unusual about his behavior. Butler testified that after the student completed the test, she consensually engaged in both fellatio and sexual intercourse. Based on this evidence, the jury was unable to reach a verdict.
 
 
 5
 At Butler's second trial, the state presented much of the same evidence but declined to call Dr. Henderson, concluding his testimony was more helpful to the defense. The case presented by the defense, however, differed dramatically. Defense counsel failed to subpoena Dr. Henderson and only called one witness from the first trial. In addition, counsel promised the jury Butler would testify and later refused to allow him to take the stand. The sole witness presented by the defense testified that on the day of the alleged rape she gave Butler a ride to his car after class and noticed "nothing unusual about his behavior." The second jury convicted Butler and sentenced him to life imprisonment.
 
 
 6
 Butler appealed his conviction to the Tennessee Supreme Court without success. In 1980, Butler filed a petition for writ of habeas corpus in federal district court. The district court granted the petition. This court, however, reversed the district court and reinstated Butler's conviction and sentence. Butler v. Rose, 686 F.2d 1163 (6th Cir.1982) (en banc ). In 1983, Butler filed a motion for post conviction relief in state court. Ultimately, the Tennessee Supreme Court denied the motion. Butler v. State, 789 S.W.2d 898 (Tenn.1990). In 1990, Butler again sought federal relief alleging ineffective assistance of counsel and in 1993, the district court issued the writ. This timely appeal followed.
 
 II. Discussion
 
 7
 On appeal, Appellant argues the district court erred by finding:
 
 
 8
 (1) Butler's petition was not an abuse of the writ; and
 
 
 9
 (2) Butler received ineffective assistance of counsel at his second trial.
 
 
 10
 We discuss each allegation of error below.
 
 A. Abuse of the Writ
 
 11
 Appellant argues the district court erroneously applied the cause and prejudice standard enunciated in McCleskey v. Zant and improperly concluded Butler showed cause and prejudice for his failure to raise his ineffective assistance of counsel claim within his first petition for writ of habeas corpus. 499 U.S. 467 (1991). The district court determined that Butler established cause for his abuse of the writ by "asserting he did not present these claims in his first petition because they had not yet been exhausted in state court." Additionally, the court concluded that the change in procedure set forth in Rose v. Lundy, 455 U.S. 509 (1982), holding that federal courts must dismiss petitions for writ of habeas corpus that contained both exhausted and unexhausted state claims, also constituted cause. For the reasons stated below, we agree that we must reach the merits of Butler's petition.
 
 
 12
 Although the Supreme Court recently questioned the practice on habeas review of rendering de novo review of conclusions of law and mixed questions of law and fact, Wright v. West, 112 S.Ct. 2482, 2489-91 (1992), it nonetheless affirmed the long tradition of reviewing such issues de novo.[2] See e.g., id. at 2494-96 (O'Connor, J., concurring) (collecting cases); see also Carter v. Sowders, 5 F.3d 975, 978 (6th Cir.1993), cert. denied, 114 S.Ct. 1867 (1994); Levine v. Torvik, 986 F.2d 1506, 1512 (6th Cir.), cert. denied, 113 S.Ct. 3001 (1993); White v. Smith, 984 F.2d 163, 165 (6th Cir.), cert. denied, 113 S.Ct. 2367 (1993).
 
 
 13
 A federal court may dismiss a petition for writ of habeas corpus as an abuse of the writ if the writ is a "second or successive petition ... [that] ... fails to allege new or different grounds for relief and the prior determination was on the merits or, if new and different grounds are alleged, the judge finds that the petitioner's failure to assert those grounds in a prior petition constitutes an abuse of the writ." Rule 9(b), Rules Governing Sec. 2254 Proceedings; see McCleskey v. Zant, 499 U.S. 467, 487 (1991). In 1991, the Supreme Court clarified the standard for determining when a successive petition raising a new claim constitutes an abuse of the writ. McCleskey v. Zant, 499 U.S. 467 (1991).
 
 
 14
 In McCleskey, the Court extended the abuse of writ inquiry to instances of inexcusable neglect, in addition to instances of deliberate abandonment. Id. at 493. The Court found in instances of inexcusable neglect that the failure to raise the new claim in a prior petition for habeas corpus will only be excused upon a showing of cause and prejudice. Id.; see also Lewandowski v. Makel, 949 F.2d 884, 890 (6th Cir.1991). Consequently, where a petitioner inexcusably neglects to include a claim within the first petition for habeas relief, petitioner must show cause and prejudice or the successive petition will be dismissed as an abuse of the writ. Even where a petitioner is unable to show cause, the court may excuse his failure to raise a claim if petitioner can show that a fundamental miscarriage of justice would result if the court fails to hear the claim. McCleskey, 499 U.S. at 494.
 
 
 15
 Initially, due to the unique procedural posture of this case, our application of McCleskey is strictly tied to the facts of this case. Here, for the reasons discussed below, Butler did not inexcusably neglect nor intentionally abandon his ineffective assistance of counsel claim.
 
 
 16
 At the time this case began, the Middle District of Tennessee routinely dismissed all habeas petitions containing both exhausted and unexhausted claims.[3] The Middle District required petitioners to present all exhausted claims and later present those which became exhausted. As the Appellant noted, Butler filled out a mandatory form which required inclusion only of all his exhausted claims. Butler, therefore, filed his first petition for a writ based upon his exhausted claims as the law required. Simultaneously, he filed his unexhausted claim, his ineffective assistance claim, within a state petition for post-conviction relief.[4] Consequently, when Butler filed his first petition, he complied with the procedural requirements effective at that time. As the mandatory form and Butler's subsequent actions indicate, he did not deliberately abandon or inexcusably neglect to raise his ineffective assistance of counsel claim in his first petition. Rather he merely complied with the law as it existed. Thus, he need not satisfy the cause and prejudice test announced in McCleskey.[5]
 
 
 17
 In the instant case, in 1978, Butler complied with all habeas requirements. He conducted a diligent investigation, and as instructed, filed all his exhausted claims. As the district court noted, it would be unfair now to penalize him for failing to predict the recent changes in habeas review.
 
 
 18
 Moreover, had Butler been unable to provide legal cause for filing a second petition, we find his case falls within the narrow class of cases implicating a miscarriage of justice, which requires us to reach the merits of his petition. See McCleskey, 499 U.S. at 494 (miscarriage of justice is constitutional violation that has probably caused the conviction of one innocent of the crime) (citing Murray v. Carrier, 477 U.S. 478, 493 (1985)). At issue in this case is not whether sexual intercourse occurred, but whether the intercourse was consensual. Due to ineffective legal representation, as discussed below, it is highly probable an innocent man was convicted, and we must, therefore, evaluate the merits of his petition.
 
 B. Ineffective Assistance of Counsel
 
 19
 Appellant next argues the district court erred by concluding Butler received ineffective assistance of counsel and was thereby prejudiced. The district court concluded the performance of Butler's counsel at the second trial was deficient based on the following acts or omissions:
 
 
 20
 1) his failure to secure and call Dr. Henderson as a witness;
 
 
 21
 2) his failure to question jurors about racial prejudice during voir dire, despite the publicity and racial tensions underlying the case;
 
 
 22
 3) his failure to respond appropriately to all unfairly prejudicial comments by prosecution in the closing rebuttal argument; and
 
 
 23
 4) his failure to call Butler and other defense witnesses who appeared at the first trial.
 
 
 24
 For the following reasons, we agree with the district court and find Butler received ineffective assistance of counsel during his second trial.
 
 
 25
 A reviewing court's scrutiny of counsel's performance is highly deferential. Strickland v. Washington, 466 U.S. 668, 689 (1984). Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. Id. at 690; accord United States v. Morrow, 977 F.2d 222, 229-30 (6th Cir.1992)(en banc ), cert. denied, 113 S.Ct. 2969 (1993). The court must make an independent judicial evaluation of counsel's performance and not be swayed by the defendant's possible acquiescence to counsel's performance at trial, Ward v. United States, 995 F.2d 1317, 1322 (6th Cir.1993), and it must ensure counsel acted reasonably under all circumstances. Sims v. Livesay, 970 F.2d 1575, 1580-81 (6th Cir.1992).
 
 
 26
 To establish ineffective assistance of counsel, a petitioner must show that counsel's deficient performance prejudiced the defense so as to render the trial unfair and the result unreliable. Strickland, 466 U.S. at 687; Sims, 970 F.2d at 1579; Beam v. Foltz, 832 F.2d 1401, 1408-09 (6th Cir.1987), cert. denied, 485 U.S. 980 (1988); United States v. Cox, 826 F.2d 1518, 1525-26 (6th Cir.1987), cert. denied, 484 U.S. 1028 (1988). Both the performance and prejudice components of the Strickland test present mixed questions of law and fact, and are subject to de novo review. Strickland, 466 U.S. at 698; Sims, 970 F.2d at 1579; see also Wright v. West, 112 S.Ct. 2482, 2489-91 (1992).
 
 1. Performance
 
 27
 Viewing the record in its entirety, we find Butler received ineffective assistance of counsel at his second trial. Of the factors the district court relied upon to find ineffective assistance, the most disturbing was counsel's failure to secure Dr. Henderson as a witness. Although the state originally subpoenaed Dr. Henderson, the state later contacted him and informed him that his testimony was no longer needed. Dr. Henderson promptly went fishing. Butler's trial counsel relied upon the state's subpoena, and did not subpoena Dr. Henderson. Thus, he did not realize Dr. Henderson was not going to testify until the state closed its case in chief without calling Dr. Henderson. Butler's counsel then requested a brief recess and discovered Dr. Henderson had gone fishing and was unavailable.
 
 
 28
 We agree with the district court that the probative effect of Dr. Henderson's testimony cannot be lightly discarded. Henderson's testimony strongly contradicted the state's theory that the victim was forced to have non-consensual intercourse. At Butler's first trial, Henderson testified that when examining rape victims, he routinely looks for cuts, bruises, abrasions, and the like and found no such injuries to the victim in this case. As the district court stated, "Henderson's implicit major premise is based on long medical experience that in a rape situation, the woman's body is usually not prepared physiologically to cushion the act of intercourse, thus making physical injury far more likely. Certainly, Henderson's testimony dealt a significant blow to the State's theory of non-consensual intercourse--especially in view of Butler's testimony that the jurors who approached him after the first trial told him they were most convinced by Henderson's testimony to vote for acquittal." (JA at p. 145). Dr. Henderson's testimony was crucial to Butler's defense of consensual sex. The failure to present strong evidence that corroborated Butler's defense and rebutted the student's allegations of rape clearly constituted ineffective assistance.
 
 
 29
 In a similar pre-Strickland case, this court found that where a defense attorney convinced his client not to testify and failed to call two alibi witnesses who were willing to testify constituted ineffective assistance of counsel. Wilson v. Cowan, 578 F.2d 166, 168 (6th Cir.1978). In Wilson, a separate panel rejected defense counsel's rationale that the witness had weak and possibly damaging testimony for failing to call the witness and found defendant received ineffective assistance of counsel. Id. Here, counsel's failure to double-subpoena the most valuable witness to the defense in the mistaken belief that the prosecution would call the witness is compelling evidence of ineffective assistance of counsel. This omission cannot be termed trial strategy.
 
 
 30
 Because counsel's failure to obtain Dr. Henderson's presence for the second trial constitutes ineffective assistance of counsel, we need not examine the other bases for the district court's conclusion. We note, however, that counsel's failure to voir dire the jury concerning the inflammatory racial issues presented by this case further indicates the breadth of the ineffective assistance and buttresses our conclusion.
 
 2. Prejudice
 
 31
 To satisfy the prejudice prong of the Strickland test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; accord Sims, 970 F.2d at 1581; Cox, 826 F.2d at 1525-26. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. As we stated in Ward, "the essential question is whether better lawyering would have produced a different result." 995 F.2d at 1321; see also United States v. Sanchez, 960 F.2d 610, 612 (6th Cir.1992) (per curiam).
 
 Here, the district court concluded:
 
 32
 In light of the finding of deficient performance of counsel, the Court believes that there is more than a reasonable possibility that the result of Butler's trial would have been different as a result of it. If anything, the 11-1 vote for acquittal is damning evidence that the discrepancies in Ellis' performance in the second trial qualify as prejudicial. A similar mistrial (from a hung jury in the first trial) was held to be indicative evidence against the defendant was not overwhelming in Blackburn v. Foltz, 828 F.2d 1177 (6th Cir.1987); the court in that case found a reasonable possibility that the jurors would have had a reasonable doubt as to the defendant's guilt but for counsel's errors.
 
 
 33
 (JA at p. 151). We agree. But for counsel's errors in the instant case, the jurors would have had a reasonable doubt as to Butler's guilt. Counsel failed to secure and present crucial medical testimony demonstrating the victim lacked any injury consistent with most findings of rape. This testimony directly supported the defense of consent. Additionally, counsel failed to voir dire the jury to ferret out potential racial prejudice in a case that involved the alleged rape of a white female by a black male in the early 1980's. Moreover, counsel promised the jury Butler would testify and then prohibited him from doing so. Consequently, we are convinced the outcome of Butler's second trial would have been different but for counsel's errors.
 
 III. Conclusion
 
 34
 We conclude the district court properly determined Butler received ineffective assistance of counsel at his second trial, and thus, properly granted his petition for writ of habeas corpus. We, therefore, AFFIRM the order of the Honorable Thomas A. Wiseman, Jr., United States District Judge for the Middle District of Tennessee.
 
 
 35
 RYAN, Circuit Judge, dissenting.
 
 
 36
 Because I harbor serious questions regarding whether the petitioner has shown that he did not abuse the writ of habeas corpus, and because I cannot agree that the petitioner received constitutionally ineffective assistance of counsel, I respectfully dissent.
 
 I.
 Abuse of the Writ
 
 37
 Under 28 U.S.C. Sec. 2244(b), if a state prisoner has applied for and been denied a writ of habeas corpus by a federal court, and then submits a subsequent petition asserting a new ground for relief, the prisoner must not have "on the earlier application deliberately withheld the newly asserted ground or otherwise abused the writ." If the prisoner has abused the writ, then the subsequent petition "need not be entertained." Sec. 2244(b).
 
 
 38
 In McCleskey v. Zant, 499 U.S. 467 (1991), the Supreme Court clarified the analysis applicable to deciding whether a habeas petitioner has abused the writ. After reviewing its case law, the Court concluded, "Abuse of the writ is not confined to instances of deliberate abandonment." Id. at 489. In addition to deliberate abandonment, a petitioner may abuse the writ through "inexcusable neglect." Id. at 490. The Supreme Court likened the "procedural default" doctrine, which generally prohibits a petitioner from raising "claims defaulted in state court," to the abuse-of-the-writ doctrine, which generally prohibits a petitioner from raising "claims defaulted in the first round of federal habeas." Id. Both doctrines delineate when a federal court should excuse defaulted claims by invoking "the court's equitable discretion" and both focus on the petitioner's conduct. Id.
 
 
 39
 We now hold that the [cause and prejudice] standard applies to determine if there has been an abuse of the writ through inexcusable neglect.
 
 
 40
 Id. at 493.
 
 
 41
 The Court then explained how the cause and prejudice analysis applies to abuse-of-the-writ cases. First, the government satisfies its burden of pleading abuse of the writ by clearly and particularly "not[ing] petitioner's prior writ history, identif[ying] the claims that appear for the first time, and alleg[ing] that petitioner has abused the writ." Id. at 494. Then, the petitioner bears the burden to disprove abuse. Id. The petitioner must show "cause" for failing to raise the new claim, and show "prejudice" from that failure. Id. "Cause" is " 'some external impediment preventing counsel from constructing or raising the claim.' " Id. at 497 (alteration in original) (quoting Murray v. Carrier, 477 U.S. 478, 492 (1986)). External impediments include " 'interference by officials,' " a factual or legal basis " 'not reasonably available to counsel,' " and "constitutionally '[i]neffective assistance of counsel' " in preparing the earlier petition. Id. at 494 (quoting Murray, 477 U.S. at 488). Even if a petitioner cannot show cause and prejudice, the federal court may entertain the subsequent petition in order to avoid a "fundamental miscarriage of justice." Id. at 495.
 
 
 42
 By drawing upon the procedural default doctrine, the Supreme Court took advantage of a standard "[w]ell defined in the case law." Id. at 496. But the present case does not seem to fit into McCleskey 's explanations of deliberate abandonment or inexcusable neglect.
 
 
 43
 In November 1978, Butler filed his first federal habeas petition. Butler contends, and the district court agreed, that the "common practice" in the Middle District of Tennessee in November 1978 was to file exhausted claims in a habeas petition, then contemporaneously proceed to exhaust unexhausted claims in state court. And, if the first habeas petition was denied, a second habeas petition containing the newly exhausted claims could be filed. A four-justice plurality in Rose v. Lundy, 455 U.S. 509, 520-21 (1982), suggested that proceeding in this fashion is an abuse of the writ. Butler asserts, however, that in reliance on the 1978 practice, he filed the first habeas petition without including the ineffective assistance of counsel claim because that claim was unexhausted, and promptly proceeded to exhaust that claim in Tennessee state court. I doubt whether Butler has established these assertions; however, if true, then his conduct amounted to a deliberate choice to file the ineffective assistance of counsel claim in a second habeas petition. In all events, Butler did not "deliberate[ly] abandon[ ]" the claim. Purportedly, there was no risk in the Middle District of Tennessee in 1978 that he would not be permitted to raise the claim in a second petition. Nor did Butler "inexcusabl[y] neglect" to include the claim. Apparently, Butler knew full well of the ineffective assistance claim, and purportedly made a deliberate choice to take advantage of the district court's common practice to permit a prisoner to proceed with exhausted claims and return later with a second petition.
 
 
 44
 Rather, Butler's version of the events surrounding the 1978 petition is best governed by another aspect of the procedural default doctrine, one which, given the facts presented to it, the Supreme Court did not address in McCleskey. In Warner v. United States, this court explained the applicability of a procedural default analysis:
 
 
 45
 [A]bsent a showing of cause and prejudice, a petitioner cannot raise issues in a [habeas ] petition which he failed to raise in state court, if required by an adequate and independent state procedural rule.... This rule only applies, however, to [a] "firmly established and regularly followed state practice[ ]."
 
 
 46
 975 F.2d 1207, 1213 (6th Cir.1992) (citation omitted) (emphasis added) (quoting Ford v. Georgia, 498 U.S. 411, 423-24 (1991)), cert. denied, 113 S.Ct. 1314 (1993). In Warner, the habeas petitioner did not raise his ineffective assistance of counsel claim on direct appeal of his 1980 state conviction. When he attempted to raise the issue in an Ohio post-conviction proceeding, the Ohio Court of Appeals held that a 1982 Ohio Supreme Court decision required that ineffective assistance claims be brought on direct appeal, and thus the petitioner had procedurally defaulted the claim. Id. at 1213. In federal court, Ohio argued that the procedural default analysis applied and that no cause existed for failing to include the claim on direct appeal. The court in Warner refused to apply the cause and prejudice analysis because "[i]n 1980, there was no clearly established precedent requiring ineffective assistance of counsel claims to be raised on direct appeal." Id. at 1213-14. The Ohio Supreme Court decision relied upon by Ohio for establishing the procedural default had not been decided until 1982--after the time of the asserted procedural default. Id. at 1213. At the time of the petitioner's failure to include the ineffective assistance claim on direct appeal, Ohio law permitted him to raise the claim in a post-conviction proceeding. Id. at 1214.
 
 
 47
 Similarly, a petitioner accused of abusing the writ might make a deliberate choice to forego raising a claim in an initial petition because he knew that the claim would be presentable in a second petition. Here, Butler contends that the Middle District of Tennessee in 1978, when he filed the first federal habeas petition, permitted petitioners to file a second petition containing newly exhausted claims. Relying on the law in the district, according to Butler, he diligently pursued the ineffective assistance claim in state court, exhausted the claim, and filed this second petition. This 1978 common practice was not called into serious question until 1982 in the plurality opinion in Rose v. Lundy, 455 U.S. at 520-21. In such circumstances, it seems that the cause and prejudice analysis should not apply in the abuse of the writ context, just as it would not apply in the procedural default context.[1]
 
 
 48
 However, the record below does not adequately reflect Butler's version of the circumstances surrounding his first habeas petition. The district court's statements regarding the common practice of the Middle District of Tennessee are unsupported by factual or legal authority. Research fails to verify or refute the proposition that the district routinely permitted petitioners to proceed with exhausted claims without risk of waiving unexhausted claims. Furthermore, no evidence establishes whether Butler actually relied on the asserted common practice, or was instead splitting claims out of ignorance or in order to gain strategic advantages. Consequently, I have some doubt whether it is proper to refrain from applying the cause and prejudice analysis. In any event, the majority finds that the "miscarriage of justice" exception to the cause and prejudice analysis applies here, maj. op. at 6-7, and thus reaches the merits of Butler's ineffective assistance of counsel claim. I strongly disagree with the majority's decision to affirm the district court on the merits, and therefore it is unnecessary to rest my dissent on the abuse of the writ issue. Instead, I shall now express my respectful disagreement with the majority's determination that Butler received ineffective assistance of counsel.
 
 II.
 Ineffective Assistance of Counsel
 
 49
 As the majority explains, the district court relied on four omissions by Butler's trial counsel in order to support its conclusion that Butler received ineffective assistance of counsel under the Sixth Amendment:
 
 
 50
 1. the failure to "double-subpoena" Dr. Henderson;
 
 
 51
 2. the failure to voir dire the jurors about racial prejudice;
 
 
 52
 3. the "failure to respond appropriately to all unfairly prejudicial comments by [the] prosecution in the closing rebuttal argument"; and
 
 
 53
 4. the failure to call Butler and other witnesses.
 
 
 54
 I shall respond to each of these alleged deficiencies in turn. It is appropriate, however, to first observe that in order to establish ineffective assistance of counsel, Butler must show that his "counsel's performance was deficient" and that the "performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). When determining whether Butler's trial counsel engaged in a constitutionally deficient performance, this court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The court must make this determination in light of all the circumstances and as of the time of the allegedly deficient conduct. Id. at 690. Finally, decisions that " 'might be considered sound trial strategy' " do not constitute ineffective assistance of counsel. Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).
 
 
 55
 The majority concludes that the trial counsel's "failure to secure Dr. Henderson as a witness" is the "most disturbing" omission by the counsel. "Disturbing" perhaps, but not an omission amounting to Sixth Amendment ineffectiveness. Decades of experience satisfy me that it is a common if imperfect practice for criminal defense lawyers to rely on the prosecution's subpoena of a witness. The Sixth Amendment's guarantee of effective assistance of counsel did not require a superabundance of caution, or as the majority would have it here, a "double-subpoena" of Dr. Henderson. At the time of the trial, the doctor was under subpoena by the State. At most, it might have been ideal to double-subpoena the doctor, but the lack of a double-subpoena did not render the counsel's performance constitutionally ineffective.
 
 
 56
 Additionally, the other omissions of which Butler complains are easily considered strategy decisions. Deciding not to question the venire about racial prejudice during voir dire, the second omission, is simply justified; counsel may have wished to avoid implicitly accusing potential jurors of racism or expressly injecting race into the trial as a primary issue. Similarly, as to the third omission, the failure to object to the prosecution's allegedly unfairly prejudicial comments during closing argument, counsel may have wanted to avoid highlighting those comments to the jury and thus focusing the jurors' attention upon damaging subject matter. Butler's counsel did make two objections during the closing argument, and refraining from making more objections could well be considered counsel's hope to avoid appearing overly contentious in front of the jury.
 
 
 57
 Finally, also within the bounds of reasonable professional judgment were counsel's decisions to call neither Butler nor three witnesses who had testified at the first trial. During Butler's testimony at the first trial, according to his counsel, Butler was a very poor witness, laughing at inappropriate times and otherwise making a most unfavorable impression upon the jury. In addition, the State produced devastating rebuttal witnesses after Butler testified. Furthermore, the other witnesses would have provided tepid exculpatory evidence, to say the least. Two would have testified that Butler was acting normally after the alleged crime, and the third would have testified that after the alleged crime, the victim attempted to make a telephone call from an office several floors below Butler's office, but did not know whom she was calling or why. Deciding not to call these witnesses was not ineffective assistance of counsel under the Sixth Amendment.
 
 
 58
 Major criminal trials are not conducted in an emotional or psychological vacuum. Every trial has a tone, an atmosphere, a personality. Experienced trial counsel know this and implement procedural strategies consistent with their reading of the "chemistry" of the jury. The Strickland doctrine affords relief when the conduct of defense counsel amounts to no counsel at all within the meaning of the Sixth Amendment. It does not empower appellate courts to second guess that the failure of counsel to employ every trial objection or defense stratagem that might conceivably be available means that the defendant had no counsel at all within the meaning of the Sixth Amendment.
 
 
 59
 For the foregoing reasons, I would reverse the judgment of the district court.
 
 
 60
 JOHNSTONE, Senior District Judge.
 
 
 61
 I concur with the rationale and conclusions reached in the opinion of Judge Keith. I write separately to express my concern that denial of the writ will create a flagrant miscarriage of justice. Under McCleskey v. Zant, 111 S.Ct. 1454, 1470 (1991), failure of Butler to raise the claim of ineffective assistance of counsel in his first petition is excused if he shows that a "fundamental miscarriage of justice would result from a failure to entertain the claim." Butler met this burden. The record is replete with instances of inequities that most likely resulted in the conviction and imprisonment of an innocent defendant.
 
 
 62
 As Judge Keith has written, counsel's most egregious error was his failure to secure Dr. Henderson as a witness at the second trial. This alone constitutes a fundamental miscarriage of justice. Henderson, who examined the alleged victim shortly after the incident, testified that she had no abrasions, tearing of tissue, bleeding, or signs of injury of any kind. His testimony was crucial to contest the prosecutorial theory of rape.
 
 
 63
 The list of errors continues. Counsel failed to call Butler as a witness even though he told the jury that Butler would testify; counsel failed to respond to prejudicial comments by the prosecution; counsel failed to call other defense witnesses who appeared at the first trial; counsel failed to voir dire the all white jury about racial prejudice. Judge Birch, of the Court of Criminal Appeals of Tennessee, wrote in a concurring opinion on a Petition to Rehear: "I remain convinced that counsel's conduct of the voir dire [failure to question prospective jurors regarding the presence of racial prejudice] fully and alone entitles the defendant to a new trial." Butler v. State of Tennessee, 1988 W.L. 93001 (Tenn.Crim.App.1988).
 
 
 64
 At a post conviction hearing, Butler testified that he interviewed jurors from the first trial and was told that Henderson's and his own testimonies were "the most convincing things that happened at that [the first] trial." (Transcript of Post-Conviction Hearing, p. 50). Yet these vital witnesses were eliminated from the second trial. He further testified that jurors from the first trial, after they were unable to reach a unanimous verdict, told him that their split was eleven to one for acquittal. (Transcript of Post-Conviction Hearing, pp. 37-38). This information reinforces the fact that the glaring errors made during the second trial produced an unfair and unreliable outcome. In view of the racial tensions surrounding the action, counsel's cumulative mistakes resulted in a fundamental miscarriage of justice.
 
 
 65
 With these elaborations, I concur with the opinion of Judge KEITH.
 
 
 
 *
 The Honorable Edward H. Johnstone, Senior United States District Judge for the Western District of Kentucky, sitting by designation
 
 
 [2]
 Appellant contends the district court erred by reviewing mixed questions of law and fact de novo. As stated above, in 1992, the Court affirmed the tradition of reviewing habeas proceedings, i.e. mixed questions of law and fact, de novo. Wright v. West, 112 S.Ct. 2482, 2489-91 (1992)
 
 
 [3]
 In 1982, the Supreme Court affirmed the practice of the Middle District of Tennessee, and held federal district courts must dismiss habeas petitions which contain exhausted and unexhausted state claims. Rose v. Lundy, 455 U.S. 509, 522 (1982). The plurality indicated that the process of proceeding on exhausted claims in a petition, exhausting remaining claims in state court and presenting the newly exhausted claims in another petition may result in dismissal for abuse of the writ. Id. at 521. A majority of the Justices, however, suggested that such actions would not constitute an abuse of the writ. Justice White specifically rejected this argument for finding an abuse of the writ. Id. at 538. Justice Brennan stated that such actions would only be considered an abuse if the prisoner deliberately chose not to include all of his claims in one petition for purposes of delay. Id. at 537
 
 
 [4]
 Tennessee's Post-Conviction Procedure Act, Tenn.Code Ann. Sec. 40-30-101 et seq., allows a defendant to challenge his conviction and sentence by filing a petition for post-conviction relief. The petition, however, must be filed within three years after the date of final action of the highest state appellate court to which an appeal is taken from his conviction. Tenn.Code Ann. Sec. 40-30-102; Potts v. State, 833 S.W.2d 60, 61 (Tenn.1992), habeas corpus denied, 1993 Tenn.Crim.App. LEXIS 87 (Tenn.CrimCt.App. Feb. 17, 1993)
 
 
 [5]
 We note that the district court erred by concluding Tennessee's habeas proceedings and the change in federal habeas proceedings constituted a procedural bar. To meet the cause requirement, petitioner must show that an external impediment impeded defense counsel's efforts to raise a claim in an earlier petition. McCleskey, 111 S.Ct. at 1470. An external bar may include interference by state officials, novelty of claim and ineffective assistance of counsel during the habeas process. Id. at 1470. Interference by state officials includes interference that prevents a prisoner from complying with procedural requirements. See Brown v. Allen, 344 U.S. 443, 486 (1953). Tennessee's procedural habeas rules do not constitute a procedural bar, and therefore, do not satisfy the cause requirement
 
 
 [1]
 I note agreement with the majority's conclusion, maj. op. at 6 n. 5, that Butler did not prove "cause" simply by pointing out that the Middle District of Tennessee would have dismissed the unexhausted ineffective assistance claim if brought in the first habeas petition. As the majority notes, the district's practice of dismissing a petition containing both exhausted and unexhausted claims did not constitute an "external impediment," McCleskey, 499 U.S. at 497, to bringing the ineffective assistance claim. Butler could have exhausted the ineffective assistance claim, and then filed one federal habeas petition